830 A.2d 537

**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Reginald Anthony HALL, Appellant.**

Supreme Court of Pennsylvania.

Argued March 6, 2002.

Decided Aug. 18, 2003.

236

Candace Cain, Suzanne M. Swan, Renee Domenique Pietropaolo, Pittsburgh, M. Susan Ruffner, for Reginald Anthony Hall, Appellant.

Michael Wayne Streily, Kevin Francis McCarthy, Pittsburgh, for the Com. of PA, Appellee.

Before: ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## *OPINION*

Justice CASTILLE.

Two questions are presented on this appeal: (1) the sufficiency of the evidence to prove the intent to inflict serious bodily injury necessary to sustain appellant's conviction for aggravated assault under 18 Pa.C.S. § 2702(a)(2); and (2) the constitutionality of the trial court's jury charge premised upon 18 Pa.C.S. § 6104. For the following reasons, we affirm.

At trial, Susan Sullivan testified that, at approximately 4:00 p.m. on April 29, 1996, she was driving her car near the intersection of Flagler and Grant Streets in McKeesport, Pennsylvania, when she saw appellant, whom she knew, walking along the street. Sullivan stopped her car to say hello. After a brief conversation, appellant asked Sullivan for a ride up the street. Sullivan allowed appellant to ride on the hood of her car, with his back toward her, for the short distance she was taking him. As she proceeded up the street, Sullivan saw a police car coming toward her. At the same time, Sullivan heard one or two gunshots. Sullivan testified that she did not see who fired the gunshots and that she was not looking at appellant when the shots were fired. Sullivan then saw appellant jump from the hood of her car, flee on foot, and disappear over a fence as a police officer chased him. After

appellant cleared the fence and was beyond her view, Sullivan heard one or two more shots.

Sergeant Mark Haltzman of the McKeesport Police Department testified that, at approximately 4:05 p.m. on April 29, 1996, he was in a marked police cruiser and responding to a radio broadcast of a man pointing a gun out of a car window. When Haltzman approached the intersection of Flagler and Grant Streets, he saw appellant sitting on the hood of Sullivan's car. Haltzman saw appellant fire three gunshots down Flagler Street. These shots were not fired toward Haltzman. Haltzman stopped his patrol car and made eye contact with appellant, whom he knew. As Haltzman exited his cruiser, appellant jumped from Sullivan's car and began to run. As appellant fled, he fired two more shots, this time in the direction of Haltzman, who was a mere 60–70 feet away. The officer was not struck.

Haltzman took cover, radioed a description of appellant to other officers, and then began to pursue appellant. Shortly thereafter, police officers found appellant hiding between two houses, wearing only one shoe, his right. No weapon was found on appellant, but a search revealed a .25 caliber semiautomatic handgun in the grass near the fence appellant had jumped. Appellant's left shoe was found on the other side of the fence. Appellant had no license to carry the handgun.

Appellant testified at trial and admitted that the .25 caliber handgun was his and that he had no permit to carry it. He also admitted that he fired the two sets of gunshots witnessed by Sullivan and Haltzman. In attempting to explain the shootings, appellant claimed that, earlier that day, a man named Ivan Wocoward, with whom appellant had argued months before, had fired two shots at him. Appellant stated that he retrieved a handgun he had stashed in an alley and began searching for Wocoward, intending to shoot him. At this point, he encountered Sullivan. Appellant further claimed that, as he was riding on Sullivan's car hood, he spotted Wocoward on Flagler Street, aimed his gun at him, and fired at him three times. Appellant then fled when he saw the police cruiser coming towards him, his thought being, "How

am I going to run and get away, which way should I run?" According to appellant, as he fled his finger was still on the trigger and the gun went off accidentally—twice—as he was climbing the fence. Appellant denied that he intended to shoot Sergeant Haltzman or that he was aiming the gun at him. Appellant was impeached with, *inter alia,* evidence of his four prior juvenile adjudications of delinquency for *crimen falsi* offenses, as well as his admission that he had lied in his statement to police.

On March 12, 1997, the jury convicted appellant of aggravated assault under 18 Pa.C.S. § 2702(a)(2), which is graded as a felony of the first degree,[1] and recklessly endangering another person. On April 22, 1997, the trial court sentenced appellant to ten to twenty years' imprisonment for aggravated assault. No sentence was imposed for reckless endangerment.

Appellant, who did not file a timely direct appeal, sought and was granted reinstatement of his appeal rights *nunc pro tunc* via a petition he filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.* On that appeal, the Superior Court affirmed the judgment of sentence. This Court granted limited review to examine the following two questions:

1. Whether an instruction which connects intent to inflict serious bodily injury with use of an unlicensed firearm is violative of the due process clauses of the Pennsylvania and United States Constitutions.

2. Whether the evidence was sufficient to demonstrate specific intent to inflict serious bodily injury.

---

1. Section 2702(a)(2) makes it a felony of the first degree if a person "attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty." Among the persons listed in subsection (c) are police officers. Appellant was also convicted of aggravated assault as a felony of the second degree under subsection (a)(3), which is identical to subsection (a)(2), except that mere "bodily injury" (caused or attempted), and not "serious bodily injury" need be shown. This lesser-included conviction merged for sentencing purposes.

These are both questions of law, as to which our standard of review is plenary. In conducting that plenary review, we may examine the entire record.

The questions for review are related. Since Sergeant Haltzman was not struck by the gunshots and was not otherwise injured, the Commonwealth was required to prove that appellant attempted to cause the officer serious bodily injury, in order to sustain the conviction for aggravated assault as a felony of the first-degree. 18 Pa.C.S. § 2702(a)(2). Section 2702 of the Crimes Code does not further define what is required to prove criminal attempt, but Chapter 9 of the Code, which sets forth inchoate crimes, and is part of the Code's Preliminary Provisions, does: "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). Section 302 of the Code, which addresses "General requirements of culpability," defines "intentionally" as follows:

1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S. § 302(b)(1). Thus, the Commonwealth was required to prove that, when appellant fired his gun (which appellant does not dispute having discharged), it was his intention or "conscious object" to inflict serious bodily injury upon Sergeant Haltzman.

Appellant now contests both the legal sufficiency of the evidence to prove his intent and the trial court's jury charge, which was premised upon 18 Pa.C.S. § 6104, on the ground that it violated due process because it diluted the Commonwealth's burden of proof on the intent element. Since the sufficiency claim, if it had merit, would require the greater

relief (discharge as opposed to a new trial) and would obviate the necessity of considering the claim concerning the constitutionality of the jury charge, we will consider that claim first. *See Wertz v. Chapman Township,* 559 Pa. 630, 741 A.2d 1272, 1274 (1999) ("It is axiomatic that if an issue can be resolved on a non-constitutional basis, that is the more jurisprudentially sound path to follow"); *accord Commonwealth, Department of Transp. v. McCafferty,* 563 Pa. 146, 758 A.2d 1155, 1159 (2000).

 The standard for reviewing sufficiency claims is settled. Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, and taking all reasonable inferences in favor of the Commonwealth, the reviewing court must determine whether the evidence supports the fact-finder's determination of all of the elements of the crime beyond a reasonable doubt. *E.g., Commonwealth v. Harvey,* 571 Pa. 533, 812 A.2d 1190, 1194 (2002). The intent to cause serious bodily injury—the only element of aggravated assault at issue here—may be proven by direct or circumstantial evidence. *Commonwealth v. Alexander,* 477 Pa. 190, 383 A.2d 887, 889 (1978) ("Criminal intent may be proved by direct or circumstantial evidence.").

> Where one does not verbalize the reasons for his actions, we are forced to look to the act itself to glean the intentions of the actor. Where the intention of the actor is obvious from the act itself, the finder of fact is justified in assigning the intention that is suggested by the conduct.

*Commonwealth v. Meredith,* 490 Pa. 303, 416 A.2d 481, 485 (1980). Moreover, "[i]n instances where there is conflicting testimony, it is for the jury to determine the weight to be given the testimony. The credibility of a witness is a question for the fact-finder." *Commonwealth v. Puksar,* 559 Pa. 358, 740 A.2d 219, 224 (1999).

 Relying upon his own testimony, appellant maintains that his gun accidentally discharged while he was fleeing from Sergeant Haltzman and that it was not aimed at the officer. Appellant also emphasizes what he views as deficiencies in the Commonwealth's evidence on intent, having to do with the

distance from which the officer observed him, the physical evidence, etc. The Commonwealth responds by emphasizing Sergeant Haltzman's testimony that, as he exited his police cruiser, appellant fired "two shots at me," and his further testimony that, "I do know that it was a weapon pointed in my direction, two shots fired directly at me." N.T. 73. The officer repeated this basic account numerous times. *See id.* at 75 ("I saw two shots fired in my direction from a weapon;" the gun "was pointed in my direction"); *id.* at 89 (when appellant fired gun at sergeant, gun was not pointed up in air, or to side of officer, but "was pointed in my general direction"). The Commonwealth notes that the jury could also rely upon the inference authorized by 18 Pa.C.S. § 6104, and thus the fact of non-licensure was further circumstantial proof that appellant intended to commit the crime of aggravated assault.[2] The Commonwealth further notes that, in attacking Sergeant Haltzman's testimony, appellant confuses a weight of the evidence claim with a sufficiency claim. The Commonwealth concludes that the evidence amply proved appellant's intent to cause the officer serious bodily injury.

Appellant's reliance upon his own testimony is unavailing since the jury, of course, was not obliged to believe his testimony that he accidentally fired the gun—two times, no less—as he was fleeing from Sergeant Haltzman and that he was not aiming the gun at the officer. Viewed in the light most favorable to the Commonwealth, there was more than adequate circumstantial evidence that appellant intended to inflict serious bodily injury or worse upon the officer. A gun is a lethal weapon; pointing it toward a person, and then

2. In forwarding this argument, the Commonwealth notes that, even if this Court were to conclude that appellant's second argument had merit (and thus that the jury should not have been instructed on the permissive inference), for sufficiency purposes, we must consider the record as including the effect of the inference. The Commonwealth is correct that, in conducting sufficiency review, this Court considers the record of the case as actually tried, and not as diminished by evidence deemed, after the fact, to have been wrongly admitted. *E.g., Commonwealth v. Lovette,* 498 Pa. 665, 450 A.2d 975 (1982), *cert. denied,* 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1025 (1983). In any event, as we shall explain below, the jury was properly charged on the Section 6104 inference.

discharging it, speaks volumes as to one's intention. *Meredith, supra.* The officer testified in no uncertain terms that appellant indeed pointed the gun in his direction—not up in the air, or off to the side, or at himself. Appellant then fired two shots—which the jury could view as evidencing a more settled intent to injure the officer than a single shot—and from a distance (60–70 feet) which obviously increased the danger of serious bodily injury or death. In addition, appellant fired the shots at the officer immediately after realizing that he had been observed by the sergeant firing his gun multiple times at another man. Appellant admitted that his purpose upon seeing the officer approach was to elude capture. Since shooting the officer certainly would facilitate that escape, the jury could reasonably infer that the shots were intended to strike the officer.

It is also notable that appellant admitted on cross-examination that he realized, as he was fleeing, that it was Sergeant Haltzman, whom he knew, who was in the police cruiser. N.T. 137. Since this particular police officer knew appellant, the jury could infer that appellant intended to seriously injure or kill the officer to better ensure an effective escape. Furthermore, appellant also admitted that the very reason he retrieved his unlicensed firearm from its hiding place in the alley that day was because he intended to shoot someone with it, namely, Ivan Wocoward. He also admitted that he acted upon that premeditated intention: *i.e.,* he admitted that the first three shots witnessed by Sergeant Haltzman and Sullivan were fired deliberately, not accidentally, at Wocoward. Appellant's admitted willingness to shoot another human being that day, and his admitted acting upon that decision, was further evidence tending to prove that he intended to injure or kill the officer when he twice fired the gun at him while attempting to escape. Finally, the fact that appellant had no license for the gun, combined with the court's permissive inference instruction, provided the jury with further reason to reject appellant's claim of accidental shooting. The fortuity that Sergeant Haltzman was not struck does not alter the fact that the evidence, viewed in the light most favorable to the Common-

wealth, strongly demonstrated that appellant's conscious purpose in firing at the officer was to inflict serious bodily injury (or worse). Appellant's sufficiency claim fails.

We now turn to appellant's due process claim premised upon the court's jury instruction on the inference the jury could draw from the fact of appellant's use of an unlicensed firearm. The Uniform Firearms Act, which is part of the Crimes Code, includes Section 6104, entitled "Evidence of intent." That section provides as follows:

> In the trial of a person for committing or attempting to commit a crime enumerated in section 6105 (relating to persons not to possess, use, manufacture, control, sell or transfer firearms), the fact that that person was armed with a firearm, used or attempted to be used, and had no license to carry the same, shall be evidence of that person's intention to commit the offense.

18 Pa.C.S. § 6104. Aggravated assault is one of the crimes enumerated in Section 6105. *Id.* § 6105(b). The trial court in this case instructed the jury **not that it was required** to view the use of an unlicensed firearm as evidence of an intention to commit the offense, but that the jury **could choose to infer** that intent:

> If you find that the Defendant used a firearm in the commission of either of the counts of aggravated assault and that he had no license to carry that firearm, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the defendant intended to commit the crime.

N.T. 180.[3] On appeal, the Superior Court approved the charge, noting that it did not set forth a mandatory presumption, but rather a permissive inference arising from the use of an unlicensed firearm, and that, under Superior Court precedent, such an instruction is proper. Slip op. at 6–7, *citing Commonwealth v. Sattazahn,* 428 Pa.Super. 413, 631 A.2d 597, 606 (1993). On the question of constitutionality, the Court

---

**3.** The court referred to multiple "counts" of aggravated assault because, as noted above, appellant was charged under two separate subsections of the aggravated assault statute relating to police officers.

recognized the following language from its decision in *Satta-zahn* as controlling:

> We likewise find a rational connection between the licensing or failure to license a firearm and the intent with which a person acts in using that firearm.

> The legislature has recognized a distinction between prohibited offensive weapons which have no peaceful purpose and "shall not be allowed to exist in our society", *Commonwealth v. Adams*, 245 Pa.Super. 431, 436, 369 A.2d 479, 482 (1976); and those which have peaceful as well as lethal potentialities. *Cf. Commonwealth v. Stewart*, 343 Pa.Super. 514, 532, 495 A.2d 584, 593 (1985). The former are banned absolutely because criminal usage is conclusively presumed, while the latter are allowed, if licensed. The obtaining of a license is tantamount to an acknowledgment that the possession is for lawful purposes; the failure to obtain a license suggests the opposite. One who envisions no criminal purpose for the firearm is unlikely to refuse, if required, to declare his ownership of that weapon to the proper authorities, while one who harbors criminal intentions will. This is not to say that in every instance the lack of a license suggests criminal intent, but rather that a lack of required license is simply another piece of circumstantial evidence from which the true intent of the user of a firearm might be ascertained in a given situation.

631 A.2d at 606–07 n. 6.

 Evidentiary tools such as Section 6104 "are commonly and often interchangeably known as 'inferences' or 'presumptions'" and, "[a]s recognized by the United States Supreme Court, '[i]nferences and presumptions are staples of our adversary system of factfinding.'" *Commonwealth v. MacPherson*, 561 Pa. 571, 752 A.2d 384, 389 (2000), *quoting County Court of Ulster County v. Allen*, 442 U.S. 140, 156, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). "These evidentiary tools are of two types: permissive and mandatory." *MacPherson*, 752 A.2d at 389. A mandatory presumption "tells the trier of

fact that he must find the elemental fact upon proof of the basic fact." *Id.*[4] In contrast,

> A permissive inference allows, but does not require, the factfinder to infer the elemental fact from proof of the basic fact and places no burden of persuasion or production on the defendant. . . . In this situation, the basic fact may constitute *"prima facie"* evidence of the elemental fact. *Ulster County Court[ v. Allen]*, 422 U.S. [140]at 157[, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979)]. . . . "A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to persuade the jury that the suggested conclusion should be inferred based on the predicate facts proved." *Francis v. Franklin*, 471 U.S. 307, 314, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).

*Id.* Accord *Commonwealth v. Kelly*, 555 Pa. 382, 724 A.2d 909 (1999).[5]

In *Kelly*, a murder case, this Court reviewed an instruction based upon Section 6104 in which the trial court had informed the jury that the fact that the defendant used an unlicensed firearm, if found, *"shall* be evidence of [Kelly's] intention to commit said crime of violence." 724 A.2d at 912 (emphasis original). The *Kelly* Court held that this instruction created a mandatory presumption which failed to pass muster under the due process clause, explaining its reasoning as follows:

> Simply put, the issue of whether one happened to be carrying an unlicensed firearm has little probative value with respect to the ultimate issue of whether one possessed the requisite intent to be convicted of a crime stemming from an act of violence that the person committed. If the fact of carrying an unlicensed firearm is probative at all, it

---

**4.** There are two different types of mandatory presumptions—rebuttable and conclusive—each of which triggers different constitutional concerns. *Id.* at 582. Since this case does not involve a mandatory presumption, those complications are of no moment here.

**5.** For both permissive inferences and mandatory presumptions, the terms "basic facts," "predicate facts," and "proven facts" are used interchangeably to describe those facts which establish the element of the crime at issue. The element of the crime at issue is referred to as a "conclusion" or "elemental fact" for permissive inferences and as a "presumed fact" or "elemental fact" for mandatory presumptions.

certainly does not rise to the level of sustaining the Commonwealth's burden of proving beyond a reasonable doubt that the accused acted deliberately. We need not decide today just how lacking in probative value we believe the fact of carrying an unlicensed firearm is with regard to proving intent; it is enough to say that it is sufficiently lacking as to have resulted in a due process violation when it formed, *by itself*, the basis of a mandatory presumption of intent, as it did with respect to the instruction at issue.

*Id.* (emphasis original).

Appellant recognizes that *Kelly* is distinguishable because the Court's charge here set forth a mere permissive inference, rather than a mandatory presumption, arising from the use of a firearm and non-licensure. Appellant nevertheless contends that the permissive charge was no less constitutionally deficient under the due process clauses of the United States and Pennsylvania Constitutions.[6] Appellant argues that, when a permissive inference may be relied upon to establish an element of an offense, the elemental fact must flow beyond a reasonable doubt from the proven fact. Brief for Appellant, 13, 19. Appellant avers that the elemental fact of his intent to inflict serious bodily injury—which was "the sole element of the crime contested by the accused" (Brief for Appellant, 20)—does not flow beyond a reasonable doubt from the isolated proven fact of his use of a firearm without a license to carry it, especially given the fortuity that no one suffered injury from his firing the weapon. *Id.* at 12, 20.

**6.** The Fourteenth Amendment of the United States Constitution provides in relevant part that, "nor shall any State deprive any person of life, liberty, or property, without due process of Law...." U.S. CONST. amend. XIV, § 1. Article I, Section 9 of the Pennsylvania Constitution states in relevant part that, "In all criminal prosecutions the accused ... [cannot] be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land." Pa. Const. art. I, § 9. This provision "has been construed as the functional equivalent of the due process provision in the United States Constitution." *Commonwealth v. Kratsas*, 564 Pa. 36, 764 A.2d 20, 27 n. 5 (2001) (citation omitted). *Accord Commonwealth v. Snyder*, 552 Pa. 44, 713 A.2d 596, 602 (1998).

Appellant acknowledges the U.S. Supreme Court's decision in *Ulster County v. Allen*, which held that a permissive inference will affect the beyond a reasonable doubt standard, and thus raise a valid due process concern, only "if, under the facts of the case, there is no rational way the trier [of fact] could make the connection permitted by the inference." But appellant counters with a citation to two decisions of this Court predating *Ulster County*—*Commonwealth v. DiFrancesco*, 458 Pa. 188, 329 A.2d 204 (1974) and *Commonwealth v. Turner*, 456 Pa. 116, 317 A.2d 298 (1974) (plurality opinion)— and a third opinion post-dating *Ulster County*—*Commonwealth v. Meredith*, 490 Pa. 303, 416 A.2d 481 (1980). Appellant argues that these three cases, which have never been overruled by this Court, require that a permissive inference involving an element of the crime must withstand reasonable doubt scrutiny on its own, and not in the context of the overall evidence. Appellant then concludes that, because the elemental fact of his intent to inflict serious bodily injury does not flow beyond a reasonable doubt from the proven fact of his use of an unlicensed firearm, his conviction rests upon an unconstitutional inference which diluted the reasonable doubt standard. Appellant further argues that the instructional error was not harmless and, accordingly, a new trial must be granted. Brief for Appellant, 16–19, 24.

In the alternative, appellant argues that, even under the *Ulster County* test, he is entitled to relief because the intent to inflict serious bodily injury is not more likely than not to flow from the mere fact of using a firearm without a license. Appellant submits that the statutory inference is irrational or arbitrary and, accordingly, is unconstitutional. Brief for Appellant, 22–24.

The Commonwealth responds by invoking the *Ulster County* due process test, as explicated in *Kelly* and *MacPherson*. The Commonwealth argues that the trial court's instruction here merely authorized a permissive inference which, when considered in the context of the evidentiary record rather than on its own and in the abstract, was rational. Accordingly, there was no constitutional error in the jury charge. The

Commonwealth further notes that this Court employed the *Ulster County* test in the context of permissive inferences in *MacPherson*. Brief for Appellee, 11–13. The Commonwealth's Brief is silent concerning appellant's reliance upon *Turner, DiFrancesco*, and *Meredith*, offering neither discussion nor distinction of those decisions.

The two most recent decisions of this Court in this area, *MacPherson* and *Kelly*, have cited and followed *Ulster County*. This Court thoroughly described the operation of the *Ulster County* test, in the context of permissive inferences, in *MacPherson*—a case, like this one, where both the federal and Pennsylvania due process clauses were at issue. 752 A.2d at 388 n. 5. Justice, now Chief Justice, Cappy began by noting the "general rule," in cases involving due process challenges to evidentiary devices of this nature:

> "the ultimate test of any device's validity in [criminal cases] remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *Ulster County Court*, 442 [U.S.] at 156, 99 S.Ct. 2213; *Commonwealth v. Kelly*, 555 Pa. 382, 724 A.2d at 911. This is so because the constitutional guarantee of due process mandates that a conviction be based on proof beyond a reasonable doubt of every fact that constitutes the crime charged. *Id.*

*MacPherson*, 752 A.2d at 390. Since permissive inferences and mandatory presumptions differ in the degree to which they restrict the factfinder's "ability to make an independent assessment of the evidence," the due process test for a permissive inference is less demanding than the test for a mandatory presumption. Thus, in the case of mere permissive inferences, the constitutional challenge cannot be raised in the abstract; instead, the defendant "must demonstrate that the inference as applied to him violated his rights of due process." *Id., citing Ulster County*, 442 U.S. at 157, 99 S.Ct. 2213. *Accord Kelly*, 724 A.2d at 911 (in case of permissive inference, "the totality of evidence in the record other than the [inference] will be germane in an analysis of the [inference's] constitution-

al validity"). This is so, not only because of concerns arising where (as here) the inference is based upon a statute,[7] but also because the very fact that the inference is permissive requires a contextual evaluation: "Inasmuch as the trier of fact may either accept or reject the inference, the question of whether the elemental fact is properly inferred from the basic fact rests on the connection between the facts in the context of an evidentiary record, not on an analysis of the relationship between the facts in the abstract." *MacPherson*, 752 A.2d at 390, *citing Ulster County*, 442 U.S. at 154–55, 162–63, 99 S.Ct. 2213. In explaining why this approach satisfies due process concerns, the *MacPherson* Court quoted the U.S. Supreme Court's analysis in *Ulster County:*

> Because this permissive [inference] leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond a reasonable doubt" standard, only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.

*Ulster County Court*, 442 U.S. at 157, 99 S.Ct. 2213.

*MacPherson*, 752 A.2d at 390.[8,9]

The preliminary analytical question for this Court is whether to evaluate appellant's claim pursuant to the *Ulster*

7. "To allow otherwise would abrogate the overriding rule, when the inference is statutory, that a party may challenge the constitutionality of a statute only insofar as it has an adverse impact on him and may not argue that it would be unconstitutional as applied hypothetically to third parties." *MacPherson*, 752 A.2d at 390.

8. This analysis stands in contrast to the analysis which obtains where the constitutionality of a mandatory presumption is at issue; there, "the courts examine the presumption on its face to determine the degree to which the basic and elemental facts coincide." *MacPherson*, 752 A.2d at 390, citing *Ulster County*, 442 U.S. at 158, 99 S.Ct. 2213.

9. Madame Justice Newman's Dissenting Opinion begins by voicing concerns with the permissive inference in the abstract. Dissenting Op.

*County* rational connection/record context test or under the test he derives from *Turner, DiFrancesco,* and *Meredith,* which would view the elemental inference in the abstract and subject it, in isolation, to the beyond a reasonable doubt standard. There is no question that *Ulster County* controls the federal due process claim. Moreover, it is apparent that the stricter due process test proposed in *Turner/DiFrancesco/Meredith* was not premised upon Article I, Section 9 of the Pennsylvania Constitution. In analyzing this test the key case is *DiFrancesco,* since *Turner,* which pre-dated it, was a mere plurality decision of no binding effect and *Meredith,* which was decided later, merely recited the *DiFrancesco* holding in a summary of general principles of law.

The *DiFrancesco* opinion made no mention of the "law of the land" clause in Article I, Section 9 in rendering its due process holding, instead analyzing the issue entirely in accordance with federal authority.[10] Justice Pomeroy's opinion traced the federal "rational connection" test for statutory presumptions back to *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), noting that the U.S. Supreme Court had since come to refine the test. Justice Pomeroy then observed that it was an open question, under the U.S. Supreme Court's then-precedent, whether inferences going to elemental facts were subject to the beyond a reasonable doubt standard:

> While the United States Supreme Court has not yet directly addressed this question, there are unmistakable intimations in its later decisions that where the inferred fact comprises an essential element of the crime charged, the inference must satisfy the reasonable doubt standard.

329 A.2d at 209, *citing Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970) and *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).

at 551. In so doing, the Dissent ignores the teaching of both *Ulster County* and *MacPherson.*

**10.** It is notable that, in discussing a later, additional claim by DiFrancesco that the statutory inference at issue was constitutionally infirm because it denied him his right of confrontation, the Court looked to both the federal and Pennsylvania clauses. 329 A.2d at 210.

Stepping into this undecided area of federal law, the *DiFran-cesco* Court held that "we are of the opinion that the constitutionality of a standardized inference invoked to establish an essential element of the crime charged must be judged by the reasonable doubt standard." 329 A.2d at 209. In so holding, the Court stressed the centrality of the beyond a reasonable doubt standard in federal due process analysis. *Id., citing In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). It is clear that *DiFrancesco* was decided under the federal charter and did not establish some distinct or stricter due process test under Article I, Section 9 for statutory permissive inferences.

Of course, the fact that *DiFrancesco* neither explicitly nor implicitly rendered a state constitutional holding does not foreclose the possibility that a stricter due process standard could be held applicable under Article I, Section 9 in a case where the issue is squarely presented. In this case, however, it is notable that appellant's brief, which is quite capably argued, does not suggest that the text or history of Article I, Section 9, or concerns of policy, recommend or require the *DiFrancesco* standard as a matter of Pennsylvania constitutional law.[11] The mere fact that this Court predicted in *DiFrancesco* that federal law might evolve differently than it ultimately did does not require divergence from the federal standard. Moreover, in other instances, this Court has declined to afford greater due process protections under our state charter. *E.g., Commonwealth v. Snyder*, 552 Pa. 44, 713 A.2d 596, 602 (1998) (noting that Court has held that phrase "law of the land" in Article I, Section 9 has same meaning as federal due process clause and, accordingly, "declin[ing] to hold ... that the due process clause of the Pennsylvania Constitution provides defendants greater protections than the United States Constitution in the area of pre-arrest delay"). Since appellant has not offered persuasive reasons grounded in the Pennsylvania constitutional experience in support of a different and more restrictive test, we will treat the due

---

11. *See Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991) (setting forth general construct for assessing claims arising under Pennsylvania Constitution).

process provisions as coextensive in this instance. *Commonwealth v. Haag*, 570 Pa. 289, 809 A.2d 271, 283 n. 13 (2002) (where appellant did not argue that Article I, Section 9 provided him with greater due process protection, state and federal provisions treated as coextensive); *Commonwealth v. Kratsas*, 564 Pa. 36, 764 A.2d 20, 27 n. 5 (2001) ("While Appellees have suggested that this Court has the ability to construe Article I, Section 9 more broadly than federal due process, they have offered no particular reasons to support such a departure; therefore, we continue to treat the pertinent constitutional guarantees as coterminous for purposes of this opinion."). Accordingly, it is the *Ulster County* test which controls our analysis.[12]

In *Kelly*, a mandatory presumption case arising under Section 6104, this Court noted that: "[w]e need not decide today just how lacking in probative value we believe the fact of carrying an unlicensed firearm is with regard to proving intent." 724 A.2d at 912. But, that is one way to view the question we must decide in this case. Under *Ulster County*, we must determine whether, in the context of the entire factual record presented to it, the jury here could rationally draw an inference of criminal intent to commit aggravated assault (by inflicting serious bodily injury upon the officer) from the fact that the gun appellant carried and fired that day was unlicensed. We think that they could. Firearms certainly have lawful purposes, but they have unlawful ones as well, the most common of which involve inflicting injury upon others or threatening such injury to accomplish other criminal objectives. Licensure involves disclosure; while non-licensure suggests the stealth by which many criminal objectives are

---

**12.** In any event, we think that the rule set forth in *Ulster County* comports with Pennsylvania due process. The concern in this area is with ensuring against the diminution of the ultimate standard requiring proof beyond a reasonable doubt to sustain a criminal sanction. That concern is certainly implicated if a mandatory presumption is at work. *See Kelly*. It is also implicated in the context of a permissive inference if, absent the inference, the evidence would be insufficient to support the element of the crime at issue. But where the evidence on that element is sufficient without the inference, review under the *Ulster County* test adequately protects against a diminution of the beyond a reasonable doubt standard.

furthered and achieved. *Accord Sattazahn*, 631 A.2d at 606 n. 6 ("The obtaining of a license is tantamount to an acknowledgment that the possession is for lawful purposes; the failure to obtain a license suggests the opposite. One who envisions no criminal purpose for the firearm is unlikely to refuse, if required, to declare his ownership of that weapon to the proper authorities, while one who harbors criminal intentions will.").

The circumstances of the crime here support the inference. Appellant was not simply detected in possession of an unlicensed firearm; he was caught in the act of firing it at another man. Appellant testified that he bought the gun "off the street," did not generally carry it on him, but instead kept it "stashed" in the alley behind Flagler Avenue, and used it "for protection." N.T. 118–19, 126. On April 29, 1996, he testified, he retrieved the gun from its hiding place after Ivan Wocoward had shot at him, with the intention of finding and shooting Wocoward. He acted upon that intention by firing three shots at Wocoward and then firing two more shots at Sergeant Haltzman in an attempt to escape after he was caught in the act. The trial evidence thus suggested a person unwilling to trust the police or other law enforcement authorities in resolving his alleged street disputes, but willing and prepared to take matters into his own hands including, if necessary, seeking out and shooting others. The fact that the gun was not lawfully purchased or licensed rationally supported an inference that it was intended to be used precisely as it was, *i.e.*, unlawfully against other people, including being used to inflict serious bodily injury. The permissive inference, on this record, was constitutional.[13] For the foregoing reasons, we affirm the order and judgment of the Superior Court.

13. Although Madame Justice Newman's Dissenting Opinion acknowledges that this case involves a mere permissive inference, and not a mandatory presumption, the Dissent does not acknowledge the controlling authority of *Ulster County* and *MacPherson* nor does it evaluate the permissive inference in the context of the trial record. Instead, the Dissent relies exclusively upon, and quotes extensively from, *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) and *Commonwealth v. Kelly, supra*—cases in which the Courts made clear that a mandatory presumption, and not a permissive inference, was at

Former Chief Justice ZAPPALA did not participate in the decision of this case.

Justice NEWMAN files a dissenting opinion.

Justice NEWMAN dissenting.

The Majority concludes that there was sufficient evidence produced to convict Reginald Anthony Hall (Hall) of attempting to injure an officer of the law and that the jury instruction at issue did not impermissibly relieve the Commonwealth of its burden to prove each and every element of the offense beyond a reasonable doubt. Because the only fact at issue in this case, the intent to commit aggravated assault, may have been resolved on the basis of a presumption, I must respectfully dissent.[1]

Hall was charged with aggravated assault after discharging a gun near the intersection of Flagler and Grant Streets in McKeesport, Pennsylvania. Among those present at the time were Susan Sullivan, on whose car Hall was riding, and Sergeant Mark Haltzman of the McKeesport Police Department (Officer Haltzman). Hall admitted to carrying an unlicensed firearm and firing it at Ivan Wocoward. Hall stated that the gun discharged accidentally when he was fleeing the

issue. *See Sandstrom*, 442 U.S. at 515, 99 S.Ct. 2450 (rejecting argument that charge which informed jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts," described permissive inference; "[i]t is clear that a reasonable juror could easily have viewed such an instruction as mandatory"); *Kelly*, 724 A.2d at 912 (instruction to jury that use of unlicensed firearm *shall* be evidence of intention to commit the crime described a mandatory presumption). "[C]areful attention to the words actually spoken to the jury," *Sandstrom*, 442 U.S. at 514, 99 S.Ct. 2450, in this case—words which informed the jury that "you may, if you choose, infer" etc.— makes it crystal clear that a mere permissive inference was authorized and that fact, in turn, requires an evaluation of the instruction in light of the trial record. A fact which may appear to have minimal probative value in the abstract may take on a different light when viewed in the context of an actual prosecution. The governing authorities require the latter analysis.

1. While the Majority concludes that there was sufficient evidence to support a finding of guilt, because I believe that the jury instruction violated Hall's due process rights and that he is entitled to a new trial, I do not address the sufficiency issue.

scene and that he did not fire at the officer. Ms. Sullivan did not see Hall fire at the officer and heard the gun discharge when Hall was near the fence. Officer Haltzman testified that he saw Hall jump from the hood of the car, but that he did not actually see Hall fire shots at him; that the gun was aimed in his general direction; and that he did not see the gun or Hall fire the gun while Hall was running for the fence. The trial judge instructed the jury that:

> If you find that the Defendant used a firearm in the commission of either of the counts of aggravated assault and that he had no license to carry that firearm, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the Defendant intended to commit the crime.

Subsequently, Hall was convicted of aggravated assault. It is clear that, pursuant to Pennsylvania law, intent to commit the crime is a necessary factual finding for a conviction for aggravated assault. Indeed, in this particular case, it was the lone element of the offense at issue in Hall's trial.

Initially, I note that 18 Pa.C.S. § 6104 is not a statute defining a crime, but is a statute concerning evidentiary proof of a crime. Generally speaking, a presumption is an evidentiary device that enables the trier of fact to determine the existence of an element of the crime from the presence of one or more evidentiary facts. Establishment of presumptions favorable to the Commonwealth in criminal cases raises delicate issues of due process through the Fifth and Fourteenth Amendments. The threshold inquiry in ascertaining the constitutional analysis applicable to this kind of jury instruction is to determine the nature of the presumption it describes. That determination requires careful attention to the words actually spoken to the jury, for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction. Here, the issue is whether, in a case in which intent is an element of the crime charged, the Commonwealth is relieved of its burden to prove every element of the crime beyond a reasonable doubt when the jury is instructed that it may presume intent to commit aggravated assault from the fact

that the defendant had an unlicensed firearm in his possession.

In *Tot v. United States*, 319 U.S. 463, 467, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), the United States Supreme Court held that "the due process clauses of the Fifth and Fourteenth Amendments set limits upon the power of Congress or that of a state legislature to make the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated." The Court held that a "statutory presumption cannot be sustained if there is no rational connection between the fact proved and the ultimate fact presumed[;]" that is, if the presumption is not closely related and does not logically flow from the fact that is proved. In the instant matter, the fact proved was that Hall owned the firearm and did not possess a license to carry it. Yet, not all owners of firearms are required to obtain a weapons license. Rifles and shotguns used in hunting may be carried without a license (although the hunter requires a license to kill), nor is the starter firing a gun that starts a race required to have a license. Guns of any type that are in transit from point A to point B whether destined for a dealer or a hobbyist or an individual do not require that licenses be obtained by those briefly in possession. Section 6106, 18 Pa.C.S. § 6106, enumerates thirteen different categories of individuals who are not required to have a license to carry a gun. Hence, it does not follow that failure to hold a valid license to carry a concealed weapon leads inexorably to a presumption, even a permissive one, that the gun owner intended to commit aggravated assault.

A person is guilty of aggravated assault if he "attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any [police officer] . . . while in the performance of [his] duty. . . ." 18 Pa.C.S. § 2702(a)(2). The officer involved was not injured and, thus, the Commonwealth was required to prove that Hall intentionally attempted to injure the officer, as articulated by the Majority. 18 Pa.C.S. § 901(a).[2] Hall testified at trial that the handgun was his,

2. 1) A person acts intentionally with respect to a material element of an offense when:

that he had no permit, and that he fired shots at another individual. Nevertheless, he denied firing the gun at the officer, alleging instead that the gun went off accidentally while he was fleeing. Therefore, the entire case hinged on the ability of the Commonwealth to establish Hall's intent to commit aggravated assault.

The Commonwealth asserts that the instruction prescribed a permissive inference, i.e., that it allowed but did not require the jury to draw conclusions about the defendant's intent from his actions. However, the United States Supreme Court has indicated that "[a] defendant's state of mind or intent is an element of a criminal offense that cannot be taken from the trier of fact through reliance on a legal presumption of wrong-doing. . . ." *Sandstrom v. Montana*, 442 U.S. 510, 523, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). It has also held that presumptions "invade [the] fact finding function, which in a criminal case the law assigns solely to the jury." *Id.* I am convinced that a reasonable juror in this case could have been misled by the instruction given and could have believed that, if it found that Hall did not possess a license for his firearm, it should find that he had the intent to commit the crime. A reasonable jury could well have interpreted this presumption as a direction by the court to find intent once convinced of the facts triggering the presumption.

We recently had occasion to discuss the impropriety of a mandatory presumption in *Commonwealth v. Kelly*, 555 Pa. 382, 724 A.2d 909 (1999),[3] also authored by Mr. Justice Castille. That case concerned a constitutional challenge to 18

\* \* \* \*

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S. § 302(b)(1).

**3.** I am aware that the Appellant in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726, 731, (2002), raised this precise issue. However, this Court declined to address the issue because the Appellant in that case failed to develop his constitutional argument.

Pa.C.S. § 6104, where the trial judge charged the jury that, if the defendant was adjudged by them to be carrying a firearm without a permit, they *must* find that the defendant intended to commit aggravated assault. Although this case concerns a permissive rather than a mandatory presumption of intent, much of what was said in *Kelly* is relevant here.

In *Kelly,* this Court reviewed an instruction to the jury based on 18 Pa.C.S. § 6104 and concluded that the jury instruction in that case created a mandatory presumption that violated due process. The language of Section 6104 has not changed, but in the instant matter, the trial judge gave the jury a similar instruction that permitted, but not required, them to consider the carrying of an unlicensed firearm as evidence of intent.

I believe that the current Majority Opinion is inconsistent with the rationale we expressed in *Kelly.* The effect of the holding in *Kelly* is that there is no reasonable relationship between carrying an unlicensed weapon and the intent to commit aggravated assault. In *Kelly,* this Court said:

Simply put, the issue of whether one happened to be carrying an unlicensed firearm has little probative value with respect to the ultimate issue of whether one possessed the requisite intent to be convicted of a crime stemming from an act of violence that the person committed.

**If the fact of carrying an unlicensed firearm is probative at all, it certainly does not rise to the level of sustaining the Commonwealth's burden of proving beyond a reasonable doubt that the accused acted deliberately.**

**We need not decide today just how lacking in probative value we believe the fact of carrying an unlicensed firearm is with regard to proving intent;** it is enough to say that it is sufficiently lacking as to have resulted in a due process violation when it formed, by itself, the basis of a mandatory presumption of intent, as it did with respect to the instruction at issue.

*Kelly,* 724 A.2d at 913 (emphasis added and in original). If there was no reasonable relationship between the act of

carrying an unlicensed firearm and the elements of aggravated assault in *Kelly* to warrant a presumption of guilt, there is also no relationship between the act of carrying an unlicensed firearm and the elements of aggravated assault to warrant even the permissive instruction in the instant matter.

Although in the instant matter the jury was instructed that the accused was presumed innocent until proven guilty, and that the Commonwealth had the burden of proving beyond a reasonable doubt that Petitioner intended to fire the weapon at Officer Haltzman, this cannot be held to overcome the prejudice that is inherent when the jury was instructed that it could consider the possession of an unlicensed firearm as presumptive evidence of that intent. As stated by Mr. Justice Brennan in *Sandstrom:*

> It follows that the trial court may not withdraw or prejudice the issue by instruction that the law raises a presumption of intent from an act. . . . [A] presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense. A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime.

*Sandstrom*, 442 U.S. at 522, 99 S.Ct. 2450 (quoting *Morissette v. United States*, 342 U.S. 246, 274–75, 72 S.Ct. 240, 96 L.Ed. 288 (1952)).

I believe that the Majority has espoused a position that is inconsistent with the rationale of *Kelly.* This is especially so where this Court, in *Kelly,* stated, "We need not decide today *just how lacking in probative value we believe the fact of carrying an unlicensed firearm is with regard to proving intent . . .*" to commit aggravated assault. Accordingly, I

would find that the jury instruction in the instant matter, which is based on Section 6104, violated Hall's due process rights.