J-S62040-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MICHAEL G. FERKO | |
| | No. 177 EDA 2014 |

Appeal from the Order Dated December 13, 2013
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0000943-2013

BEFORE:  ALLEN, J., OLSON, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED APRIL 15, 2015**

The Commonwealth appeals from the order entered December 13, 2013, in the Chester County Court of Common Pleas granting the motion for judgment of acquittal made by Appellee, Michael G. Ferko, on one count of aggravated assault.[1]  After Ferko was convicted by a jury of terroristic threats, simple assault (two counts), and aggravated assault – attempts to cause serious bodily injury,[2] he moved for a judgment of acquittal on the charge of aggravated assault, which the trial court granted.  On appeal, the Commonwealth contends the court erred in granting Ferko's motion because

_____

[1] 18 Pa.C.S. § 2702(a)(1).

[2] 18 Pa.C.S. §§ 2706(a)(1), 2701(a)(1), (a)(3), and 2702(a)(1), respectively.  The trial court also found Ferko guilty of the summary offense of harassment.  18 Pa.C.S. § 2709(a)(1).

the evidence clearly supported the jury's determination that Ferko attempted

to cause serious bodily injury to the victim. For the reasons set forth below,

we are compelled to reverse the order of the trial court, reinstate the jury's

verdict, and remand for further proceedings.

The trial court summarized the testimony presented at Ferko's trial as

follows:

> During the early morning hours of January 21, 2013, [Ferko] and his victim, J.M., were living together at the Pickering Inn, a hotel in Phoenixville, PA. They had been together 4 or 5 months as boy[friend] and girl[friend]. On that day, they had been drinking all day long – beer and vodka. J.M. was intoxicated, as was [Ferko]. J.M. testified that she wanted to party in the next apartment, but that [Ferko] wanted to go to bed. [Ferko] became agitated, which sparked the disagreement that led to J.M.'s assault by [Ferko]. J.M. resisted and tried to get out of the apartment. She clawed at his arms to get him to let her go. [Ferko] backed away eventually, and the pair started drinking again. When [Ferko] went in [the] bathroom,[3] J.M. ran upstairs, but [Ferko] followed her and took her back to their apartment. During the course of the argument and physicality that morning, reported to have lasted from 45 minutes to 3 hours, J.M. dialed 911 on her cell phone. While she did not speak to the 911 operator, the operator heard the melee and notified police, who were able to triangulate J.M.'s location, and responded to the hotel at 5:18 A.M. "for a report of a domestic." There, police confronted both [Ferko] and J.M. and, as reported in the police affidavit, observed minor cuts and abrasions on J.M.'s face and chest, who reported [Ferko] had punched her numerous times and threatened to kill her. [Ferko] was arrested, and J.M. was taken to Phoenixville Hospital, where she was seen in the emergency room by a Physician's Assistant, and diagnosed with a pressure-punctured left [eardrum], a fractured

---

[3] The rooms in the hotel shared a bathroom, which was located in the hallway, "[r]ight next door" to Ferko's room. N.T., 12/2/2013, at 30.

rib and a broken tooth. The diagnosis was verified by the PA's supervising physician, who did not examine J.M. The evidence at trial was that the punctured eardrum was consistent with a blow to the side of the face. The injuries, with the exception of the broken tooth, were photographed and shown to the jury. During the assault, [Ferko] suffered scratches on his arms, which were photographed and shown to the jury. J.M. did not seek follow-up care for her injuries.

Trial Court Order, 1/9/2014 at n.1.

At the conclusion of the testimony, the jury was instructed on the following charges: aggravated assault - causing serious bodily injury; aggravated assault – attempts to cause serious bodily injury; simple assault – attempts to cause bodily injury; simple assault – attempts by physical menace to put another in fear of serious bodily injury; and terroristic threats. As noted above, on December 4, 2013, the jury returned a verdict of guilty on one count of aggravated assault – attempts to cause serious bodily injury, as well as both counts of simple assault, and terroristic threats.[4] The jury, however, found Ferko not guilty of aggravated assault – causing serious bodily injury. Following the verdict, Ferko made an oral motion for judgment of acquittal on the charge of aggravated assault – attempts to cause serious bodily injury.[5] On December 13, 2013, the trial

---

[4] In addition, the trial court found Ferko guilty of the summary offense of harassment, but not guilty of the summary offense of disorderly conduct. **See** 18 Pa.C.S. §§ 2709(a)(1) and 5503(a)(1), (4).

[5] Ferko originally moved for judgment of acquittal on this charge at the close of the Commonwealth's case-in chief. **See** N.T., 12/3/2013, at 171. After taking the matter under advisement, the trial court denied the motion the
*(Footnote Continued Next Page)*

court granted Ferko's motion. Thereafter, the Commonwealth filed a motion for reconsideration, which the trial court denied on January 9, 2014. This timely appeal followed.[6]

On appeal, the Commonwealth argues the trial court erred in granting Ferko's motion for judgment of acquittal. Specifically, the Commonwealth contends the trial court applied an incorrect standard of review, and viewed the evidence in a light most favorable to Ferko, rather than a light most favorable to the Commonwealth, as verdict winner. *See* Commonwealth's Brief at 23. In support of this argument, the Commonwealth asserts the court overlooked the testimony of a neighbor who witnessed the assault. Moreover, it claims the trial court improperly considered Ferko's voluntary intoxication as a factor that "militate[d] against [his] formation of a specific intent to commit aggravated assault[.]" *Id.* at 29.

_____
*(Footnote Continued)*

next day, stating "I think under the facts of this case **this is a jury question**." N.T., 12/4/2013, at 4 (emphasis supplied).

[6] The Commonwealth certified in its notice of appeal that the trial court's order "effectively terminates the prosecution with respect to the charge of Aggravated Assault." Notice of Appeal, 1/10/2014. *See* Pa.R.A.P. 311(d); ***Commonwealth v. Dugger***, 486 A.2d 382 (Pa. 1985).

The trial court did not direct the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), nor did the court file an opinion pursuant to Pa.R.A.P. 1925(a). Rather, the reasons for the trial court's ruling are reflected in a footnote in its January 9, 2014, order denying the Commonwealth's motion for reconsideration.

Our review of a ruling granting a motion for judgment of acquittal is guided by the following:

"A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." As we have stated:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

"It is well recognized, however, that a criminal conviction cannot be based upon mere speculation and conjecture."

*Commonwealth v. Graham*, 81 A.3d 137, 142 (Pa. Super. 2013) (citations omitted), *appeal denied*, 93 A.3d 462 (Pa. 2014).

At issue in the present case is Ferko's jury conviction of aggravated assault – attempting to cause serious bodily injury. *See* 18 Pa.C.S. § 2702(a)(1).

A person may be convicted of aggravated assault graded as a first degree felony if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life...."  18 Pa.C.S. § 2702(a)(1). "Serious bodily injury" means "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  18 Pa.C.S. § 2301. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime."  18 Pa.C.S. § 901(a). An attempt under § 2702(a)(1) requires a showing of some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury. ***Commonwealth v. Alexander***, 477 Pa. 190, 383 A.2d 887, 889 (1978).

"A person acts intentionally with respect to a material element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result...." 18 Pa.C.S. § 302(b)(1)(i). "As intent is a subjective frame of mind, it is of necessity difficult of direct proof." [**Commonwealth v. **]***Gruff***, [822 A.2d 773, 776 (Pa. Super. 2003), *appeal denied*, 863 A.2d 1143 (Pa. 2004)] (quoting ***Commonwealth v. Roche***, 783 A.2d 766, 769 (Pa.Super.2001)).  The intent to cause serious bodily injury may be proven by direct or circumstantial evidence. ***Commonwealth v. Hall***, 574 Pa. 233, 830 A.2d 537, 542 (2003).

***Commonwealth v. Matthew***, 909 A.2d 1254, 1257 (Pa. 2006).

In ***Matthew***, ***supra***, the Pennsylvania Supreme Court reaffirmed the totality of the circumstances test, first utilized in ***Commonwealth v. Alexander***, 383 A.2d 887 (Pa. 1978), to determine whether a defendant possessed the requisite specific intent to inflict serious bodily injury necessary to support a conviction of aggravated assault, when the victim did

not, in fact, suffer serious bodily injury as a result of the assault. The

*Matthew* Court explained:

> *Alexander* provided a list, albeit incomplete, of factors that may be considered in determining whether the intent to inflict serious bodily injury was present, including evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and his statements before, during, or after the attack which might indicate his intent to inflict injury. *Alexander,* at 889. *Alexander* made clear that "simple assault combined with other surrounding circumstances may, in a proper case, be sufficient to support a finding that an assailant attempted to inflict serious bodily injury, thereby constituting aggravated assault. All we hold is that the evidence in the instant case is insufficient to support such a finding." *Id.,* at 889-90.

*Matthew*, *supra*, 909 A.2d at 1257, *citing* *Alexander*, *supra*.

In *Matthew*, the Court determined that the defendant's actions in

placing a loaded gun to the throat of the victim, then repeatedly pointing the

gun at the victim while threatening to kill him, was sufficient to establish the

defendant **intended** to inflict serious bodily injury, although the victim, was

not, in fact, injured at all. *Id.* at 1258-1259. The Court opined:

> Regarding the intent element, there was sufficient evidence for the fact-finder to conclude appellant possessed the requisite intent to inflict serious bodily injury upon [the victim] since he repeatedly threatened to kill [the victim]. *See* [*Commonwealth v.*] *Hall*, [830 A.2d 537, 542 (Pa. 2003)] (intent can be found where one verbalizes reasons for his actions). If the threats alone were not enough to establish his intent, the fact-finder could determine his intent from pushing the loaded gun against [the victim's] throat and otherwise pointing it at him. *See id*. ("Where the intention of the actor is obvious from the act itself, the [fact-finder] is justified in

- 7 -

assigning the intention that is suggested by the conduct." (citation omitted)).

*Id.* at 1259.

Here, the trial court distinguished *Matthew* from the facts of this case because Ferko "employed no weapon and made no repeated threats against [the victim]." Order, 1/9/2014, at n.1. Rather, the trial court concluded:

> [T]he angry encounter between [Ferko] and [the victim] during which the assault occurred was variously described as having lasted from 45 minutes to 3 hours. It defies credulity to conclude under the factual circumstances of this case, had [Ferko] harbored the specific intent to cause serious bodily injury to [the victim], he could not have accomplished that purpose and intent at any time during this protracted domestic incident. Instantly, [the] Commonwealth was required to prove beyond a reasonable doubt from the circumstances surrounding the assault that [Ferko] had the specific intent to cause the type of harm that in fact did not occur in this instance. As to [Ferko's] malicious conduct, []where malice is based on a reckless disregard of consequences, it is not sufficient to show mere recklessness; rather, it must be shown the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury. A defendant must display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; at the very least, the conduct must be such that one could reasonably anticipate death or serious bodily injury would likely and logically result. *Commonwealth v. O'Hanlon*, 653 A.2d 616, 618 (1995). The trial evidence clearly demonstrated that both [Ferko] and [the victim] were intoxicated, a factor that militates against [Ferko's] formation of a specific intent to commit aggravated assault under all of the instant facts.

*Id.*

Therefore, the trial court determined the Commonwealth presented insufficient evidence of Ferko's **specific intent** to cause serious bodily injury to the victim because: (1) Ferko did not use a weapon to assault the victim;

- 8 -

(2) the assault occurred over a long period of time so that Ferko could have inflicted serious bodily injury upon the victim if he had intended; and (3) both Ferko and the victim were intoxicated at the time of the assault.

The Commonwealth counters, however, that in reversing the jury's verdict, the trial court viewed the evidence in a light most favorable to Ferko, rather than the light most favorable to the Commonwealth, as verdict winner. Moreover, in doing so, the court "overlooked" the testimony of Ferko's neighbor, Terri Bearden, who witnessed the assault. Commonwealth's Brief at 29.

A review of the trial testimony supports the Commonwealth's claims. The victim testified that when she attempted to leave the apartment in the early morning hours of January 21, 2013, Ferko "[t]old [her] he didn't want [her] to leave, that [she] belonged in bed with him." N.T., 12/2/2013, at 20. The argument soon turned physical, when Ferko "smacked [her] upside [her] head a couple of times," and, after she fell back onto the couch, he "started punching [her] in [her] ribs and … upper body area." *Id.* She claimed Ferko was "straddled over top" of her, and that she began "clawing at his arms" to get him off. *Id.* at 22-23. The victim further testified that while Ferko was hitting her, "he said he was going to kill [her]." *Id*. at 32.

When Ferko finally relented, the victim went in search of a male neighbor who lived upstairs. When she could not find him, she headed back downstairs where she encountered Ferko who was "coming up the stairs to get [her] and bring [her] back down." *Id.* at 24. The victim testified that

they started arguing again, and Ferko began "smacking [her] around." *Id.* at 25. She stated that when Ferko went to the bathroom in the hallway, she dialed 911 on her cell phone and left the line open in the apartment so that the police would come. She testified, "I was afraid [Ferko] was going to kill me. He was hitting me over and over again and wasn't stopping." *Id.* The victim kept Ferko out of their apartment until the police arrived.

A neighbor, Terri Bearden, testified that she was in her apartment next door with her door closed when she heard the victim screaming, "stop it, leave me alone, get off of me." N.T., 12/3/2013, at 39. She started banging on the victim's door to see if the victim was OK. Ferko answered the door, and Bearden saw the victim crying. She asked the victim to go to the store with her so that Ferko could calm down. Bearden testified that Ferko responded, "she is not going anywhere and took [the victim] and threw her into this … dresser[-]like thing that was in their room, and slammed the door." *Id.* at 40. Bearden was able to "peek[] through" the door because the hinge was broken.[7] *Id.* at 41. She witnessed Ferko with his hands on the victim's throat, screaming, "I'm just going to kill you," as he was choking the victim. *Id.* Bearden testified that Ferko then started punching the victim in her face with a closed fist. *Id.* at 43.

---

[7] Bearden testified that although she could see in the room, she could not open the door. N.T., 12/2/2013, at 43.

Accordingly, viewing the evidence in the light most favorable to the Commonwealth, the testimony reveals that Ferko threatened to kill the victim, while he slapped, punched, and choked her over a prolonged period of time. Further, with regard to the *Alexander* factors, we note that while Ferko did not use any weapon during the assault, the record reveals that he was much larger than the 5'2", 125-pound victim,[8] and that he continued to assault the victim, on and off, until the police finally arrived.

Moreover, we note the *Matthews* Court rejected the argument that specific intent is lacking when a defendant "does not avail himself of the opportunity to follow through with threats" to harm the victim. *Matthews*, *supra*, 909 A.2d at 1258. Here, the jury was properly instructed on the elements of the crime of aggravated assault – attempts to cause serious bodily injury. *See* N.T., 12/4/2013, at 98-102. Furthermore, the trial court instructed the jury on the totality of the circumstances test set forth in *Alexander*, and told them that Ferko's intent "may be proven by the totality of the defendant's conduct and any threats made during the encounter with the victim." *Id.* at 101. Therefore, the jury, as fact finder, was left to determine whether the testimony of the victim and Bearden was credible, and if so, whether Ferko's words and actions demonstrated his intent to

_____

[8] N.T., 12/2/2013, at 23. *See* Criminal Complaint, 1/21/2013, at 1 (listing Ferko's height and weight as 6'1" and 175 pounds).

- 11 -

inflict serious bodily injury upon the victim. We conclude that the evidence presented, which the jury did find credible, was sufficient for them to return a verdict of guilty on that charge.

Lastly, with regard to the trial court's statement that the intoxication of both Ferko and the victim "militates against [Ferko's] formation of specific intent,"[9] we note that such a consideration is improper under the law. It is axiomatic that voluntary intoxication is not a defense to a criminal charge, nor may evidence of intoxication be introduced to negate the intent element of an offense. 18 Pa.C.S. § 308.[10] Therefore, the fact that Ferko was intoxicated at the time of the assault was irrelevant to the question of whether he possessed the specific intent to inflict serious bodily injury on the victim.

Accordingly, because we agree with the Commonwealth that the jury was presented with sufficient evidence to support a verdict of aggravated assault – attempts to cause serious bodily injury, we are compelled to reverse the order of the trial court granting Ferko's motion for judgment of acquittal on that charge, reinstate the jury's verdict, and remand for further proceedings.

---

[9] Trial Court Order, 1/9/2014, at n.1.

[10] The only exception to this rule is for a charge of first degree murder, where evidence of intoxication may be introduced "whenever it is relevant to reduce murder from a higher degree to a lower degree of murder." 18 Pa.C.S. § 308.

- 12 -

Order reversed.  Jury's verdict reinstated.  Case remanded for further proceedings.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/15/2015