J-S16045-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRY SCOTT, | : | |
| | : | |
| Appellant | : | No. 797 EDA 2019 |

Appeal from the Judgment of Sentence Entered January 31, 2019
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0005240-2018

BEFORE:  DUBOW, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JUNE 26, 2020**

Terry Scott ("Scott") appeals from the judgment of sentence imposed following his conviction of aggravated assault, simple assault, recklessly endangering another person ("REAP"), and possession of an instrument of crime ("PIC").[1]  We affirm.

In its Opinion, the trial court set forth the relevant factual history as follows:

> On June 30, 2018, at about 11:30 p.m., [] Don Doyle [("Doyle")] … was inside a park situated on the 900 block of North 8th Street in Philadelphia drinking beer.  [Scott], who[m Doyle] had known for three or four months by the name "T", was also present at the time.  At some point, [Scott], who had smoked crack cocaine just prior to the incident herein, asked [Doyle] for three or four dollars[,] and he told [Scott] that he had no money.  After [Doyle] told [Scott] that he had no money, [Scott] ordered [Doyle] to leave the park, a directive with which he immediately complied.

---

[1] 18 Pa.C.S.A. §§ 2702(a), 2701(a), 2705, 907(a).

As [Doyle] was exiting the park, [Scott] ran up to him and began threatening and cursing [at] him. [Scott] also punched [Doyle] in the face with his left hand and asked [Doyle] why he was running away. [Doyle] attempted to hit [Scott] back[,] and as the two men struggled, [Scott] stabbed [Doyle] three or four times with a knife he was holding in his left hand. [Doyle], who suffered on stab wound to his abdomen and others to his back, again tried to leave the area and, as he did so[, Scott] began chasing him and attempted to stab him another time. While fleeing, [Doyle] told [Scott] that he had stabbed him and that he would get his.

Philadelphia Police Officer James Crusemire [("Officer Crusemire")] and his partner responded to a radio call concerning the incident herein. [Officer Crusemire] encountered [Doyle,] and because of the seriousness of his injuries, [Officer Crusemire] immediately transported him to the hospital. At the hospital, [Doyle] stated that "T" stabbed him and also gave a description of "T."[2]

On July 2, 2018, Officer Crusemire saw [Scott] in a park located at 8th Street and Girard Avenue in Philadelphia and apprehended him on an absconder warrant and a bench warrant. Incident to the arrest, [Officer Crusemire] took a black school bag from [Scott] that contained tan pants with red stains on them and a four-inch knife. [Officer Crusemire] placed these items and a cell phone on property receipts.

Subsequent DNA testing was negative for the presence of [Doyle's] DNA on the pants and the knife found in [Scott's] possession.

[Scott] testified that he did not argue with or stab [Doyle], who[m] he knew, and that he was not present at the park when the incident occurred. [Scott] indicated that he carried the knife for self-defense and that the red stains from his pants came from berries he sat on. [Scott] admitted that he had been at the park where the incident occurred earlier in the day[,] and that when he left the park he believed that [*sic*] went to [a] friend's house who lived nearby, something he did every day.

---

2 Doyle also identified Scott as his assailant at trial. **See** N.T., 11/20/18, at 25, 26-31.

Trial Court Opinion, 7/10/19, at 2-4 (citations to record omitted; footnote added).

Following a bench trial, Scott was convicted of the above-mentioned crimes. The trial court deferred sentencing, and ordered the preparation of a pre-sentence investigation report ("PSI"). On January 31, 2019, the trial court sentenced Scott to a term of 3 to 6 years in prison, with credit for time served, followed by 4 years of probation for his aggravated assault conviction. For his PIC conviction, the trial court imposed a concurrent term of 5 years of probation. The trial court also imposed concurrent terms of 2 years of probation for his simple assault and REAP convictions. Further, the court ordered Scott to pay restitution in the amount of $320.

Scott filed a post-sentence Motion,[3] challenging the sufficiency and weight of the evidence presented, and a Motion for Reconsideration of his sentence. The trial court denied Scott's Motions. Scott thereafter filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

Scott now raises the following issues for our review:

1) Was not the 3 to 6[-]year sentence imposed for aggravated assault (F2) manifestly excessive and unreasonable, where the

_____

[3] The tenth day following the imposition of sentence was Sunday, February 10, 2019. ***See*** Pa.R.Crim.P. 720(a)(1). Thus, Scott had until Monday, February 11, 2019, to file a timely post-sentence Motion. ***See*** 1 Pa.C.S.A. § 1908 (explaining that, for computation of time purposes, when the last day of a time period falls on a Saturday or Sunday, "such day shall be omitted from the computation."). Because Scott's post-sentence Motion was docketed on February 12, 2019, this Court issued a Rule to Show Cause why this appeal, filed March 14, 2019, should not be quashed as untimely. Rule to Show Cause, 4/23/19 (citing ***Commonwealth v. Dreves***, 839 A.2d 1122, 1127 (Pa. Super. 2003) (*en banc*) (stating that the filing of an untimely post-sentence motion does not toll the 30-day appeal period)). Scott filed an Answer, explaining that he filed the post-sentence Motion at 5:31 p.m. on Monday, February 11, 2019, but that the Motion was not docketed until the following day, "presumably because the electronic filing occurred after 5:00 p[.]m[.]" Answer, 5/2/19. This Court subsequently discharged the Rule to Show Cause. Our review reflects that the post-sentence Motion contains a time-stamped filing date of February 11, 2019. ***See generally*** Pa.R.Crim.P. 114(c)(2) (requiring docket entries to contain, *inter alia*, "the date of receipt in the clerk's office of the order or court notice"); Pa.R.Crim.P. 576 (stating that when a document for which filing is required "is received by the clerk of courts, the clerk **shall time stamp it with the date of receipt and make a docket entry reflecting the date of receipt**, and promptly shall place the document in the criminal case file." (emphasis added)); Pa.R.Crim.P. 113 (providing that docket entries in criminal case files must contain, *inter alia*, all information required by Rules 114 and 576). Under these circumstances, where the time stamp on Scott's post-sentence Motion reflects a filing date of February 11, 2019, we will consider his post-sentence Motion, and the resulting appeal, to be timely filed.

trial court improperly relied on conduct for which it found [Scott] not guilty?

2) Did not the trial court abuse its discretion and impinge on [Scott's] Sixth Amendment right to counsel when it denied defense counsel's [M]otion for continuance to allow counsel time to adequately review the medical records, a toxicology report, and a DNA report, which the Commonwealth turned over to the defense on the eve and morning of trial[?]

3) Did not the trial court abuse its discretion in denying [Scott's] post-sentence [M]otion for a new trial, as the verdict was contrary to the weight of the evidence, where the sole identifying witness was drunk and high at the time of the attack?

Brief for Appellant at 4.

In his first claim, Scott argues that the trial court abused its discretion by imposing an aggravated-range sentence for his aggravated assault conviction. *Id.* at 15. According to Scott, the trial court imposed a sentence in the aggravated range because it had already given him a "break" by grading the aggravated assault conviction as a second-degree felony, as opposed to a first-degree felony. *Id.* at 15-16. Scott claims that by referring to the potential for a conviction under a higher grade, the trial court relied on conduct of which he was found not guilty. *Id.* at 16, 17. Scott also asserts that the trial court failed to appropriately consider his rehabilitative needs. *Id.* at 17-18.

Scott's claim challenges the discretionary aspects of his sentence. "It is well-settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." ***Commonwealth v. Mastromarino***, 2 A.3d

581, 585 (Pa. Super. 2010). Before we address the merits of a discretionary sentencing claim,

> [w]e conduct a four-part analysis to determine: (1) whether the appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether the appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (some citations omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (quotation marks and citation omitted). Further,

> [i]n determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

*Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013).

Here, Scott filed a timely Notice of Appeal, preserved his claim in his Motion to Reconsider, and included a separate Rule 2119(f) Statement in his appellate brief. Additionally, Scott's assertions that the trial court improperly imposed a manifestly excessive sentence, failed to provide adequate reasons

- 6 -

for imposing an aggravated sentence, failed to consider his rehabilitative needs and mitigating evidence, and imposed a harsher sentence for conduct for which he was found not guilty, raise a substantial question for our review. **See Commonwealth v. Caldwell**, 117 A.3d 763, 770 (Pa. Super. 2015) (concluding that an excessive sentence claim, together with a claim that the trial court failed to consider a defendant's rehabilitative needs and other mitigating factors raises a substantial question); **see also Commonwealth v. Serrano**, 150 A.3d 470, 473 (Pa. Super. 2016) (stating that a substantial question has been presented where an appellant alleged that the sentencing court failed to consider the defendant's individualized circumstances and rehabilitative needs); **Commonwealth v. Downing**, 990 A.2d 788, 792 (Pa. Super. 2010) (concluding that a claim that trial court relied on improper sentencing factors raises a substantial question).

> We adhere to the following standard of review:
>
> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Robinson**, 931 A.2d 15, 26 (Pa. Super. 2007).

"In every case in which the court imposes a sentence for a felony … the court shall make as part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence

imposed." 42 Pa.C.S.A. § 9721(b); *see also Commonwealth v. Mouzon*, 812 A.2d 617, 620-21 (Pa. 2002) (plurality). The Sentencing Code also provides that "the [trial] court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b); *see also Commonwealth v. McClendon*, 589 A.2d 706, 713 (Pa. Super. 1991) (stating that "the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation."). Further, the trial court must consider the Sentencing Guidelines. *Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (stating that "[w]hen imposing a sentence, the [trial] court is required to consider the sentence ranges set forth in the Sentencing Guidelines….").

Our review of the record confirms that the trial court considered the relevant section 9721(b) sentencing factors. During the sentencing hearing, Scott's counsel alerted the trial court to several mitigating factors, including Scott's good behavior in prison, his serious health issues, and concern for his mother and children. *See* N.T., 1/31/19, at 5-6. Scott also exercised his right to allocution, reiterating his concern for his mother, as well as his medical issues, which prevent him from keeping a job. *See id.* at 11-12.

The trial court stated the following in its Opinion:

[Scott] had a prior record score of five and the offense gravity score for the aggravated assault conviction was 8, making the standard range sentence 27-33 months, plus/minus 9 months. This court decided to go above the standard sentencing range because the recommended standard range of the guidelines did not reflect the seriousness of the crime or [Scott's] egregious criminal record, which included 24 separate arrests. The law permits a sentencing court to consider a defendant's criminal history....

With regard to the claim that the court did not consider the factors set forth in section 9721 of the Sentencing Code, this court certainly did so. The court carefully reviewed the various reports before imposing [the] sentence[,] and took their contents into account when deciding on an appropriate sentence. It also took into account [Scott's] mitigating factors[,] as well as those factors that called for an aggravated sentence. …

Finally, while this court did state that [Scott] already received a break because he was convicted of a less serious offense[,] and that it represented the only break [Scott] would receive, no relief is due on that claim. This is so because this court considered all required factors in fashioning its sentence, which was based on the crime [Scott] committed, his myriad arrests and convictions, and his failure to rehabilitate himself.

Trial Court Opinion, 7/10/19, at 11-12 (citations to record and some capitalization omitted).

Moreover, the trial court had the benefit of a PSI, which it reviewed with both parties at the start of the sentencing hearing. *See* N.T., 1/31/19, at 4; *see also Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) (explaining that where a sentencing judge considered a PSI, it is presumed that they are "aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."). Based upon the foregoing, we discern no abuse of the trial court's discretion

in imposing a sentence in the aggravated range of the Sentencing Guidelines. Thus, Scott is not entitled to relief on this claim.

In his second claim, Scott contends that the trial court abused its discretion, and "hampered" his Sixth Amendment right to counsel by denying his request for a continuance. Brief for Appellant at 18. Scott claims that his trial counsel "received an exculpatory DNA report at 5:00 p[.]m[.] on the evening before trial[,] and 700 pages of medical records on the morning of trial." *Id.* Scott argues that his continuance request was reasonable, and that the trial court improperly emphasized its concern for Doyle's availability and convenience. *Id.* at 18-19. According to Scott, his counsel was unable to fully prepare for trial as a result of the trial court's refusal to grant a continuance. *Id.* at 20. Scott also asserts that he did not provide any toxicology information, and that "the defense presented no evidence about [] Scott's many health ailments, referenced in the sentencing documents, that would have prevented [] Scott from chasing after [] Doyle and using a knife in one hand while punching with the other." *Id.* at 20-21.

We are cognizant of the following standard of review:

> The decision to grant or deny a continuance request rests with the sound discretion of the trial court[,] and we will not reverse the decision absent a clear abuse of discretion. This Court will not find an abuse of discretion if the denial of the continuance request did not prejudice the appellant. In order to demonstrate prejudice, the appellant must be able to show specifically in what manner he was unable to prepare his defense or how he would have prepared differently had he been given more time.

*Commonwealth v. Broitman*, 217 A.3d 297, 299-300 (Pa. Super. 2019) (internal citations and quotation marks omitted).  Further, "[a] bald allegation of an insufficient amount of time to prepare will not provide a basis for reversal of the denial of a continuance motion." *Commonwealth v. Ross*, 57 A.3d 85, 91 (Pa. Super. 2012).

In his appellate brief, Scott does not specifically explain how he would have prepared differently with a one-week continuance, nor does he identify a particular portion of his medical records, which he believes would have been exculpatory.  *See Broitman*, *supra*.  From his vague argument, it appears that Scott primarily desired additional time to review the toxicology report.[4]  Brief for Appellant at 20.  At trial, when Scott's counsel moved for a continuance, she specifically referenced the toxicology report, and explained that she believes information contained in the report would be relevant for cross-examination.[5]  *See* N.T., 11/20/19, at 14.  Defense counsel asked to continue the trial to the following week.  *See id.* at 15.  The trial court, noting that the toxicology report is typically a short document, put the case on hold until 4:00 p.m. that day to allow defense counsel time to review the document.  *See id.* at 15-17.

---

[4] Notably, Scott does not identify whether the toxicology report pertained to him or Doyle.

[5] Defense counsel also sought to introduce the contents of the DNA report, and the Commonwealth agreed to stipulate to the report.  *See* N.T., 11/20/19, at 13-14.

Additionally, in its Opinion, the trial court addressed Scott's claim as follows:

First, a week or so before the trial commenced[,] a readiness hearing was held at which the defense made no mention of missing medical records. Second, [the trial court] provided the defense a several hour continuance so that it could review the various records. When the case was reconvened, the defense did not renew its request for a continuance[,] leading this [c]ourt to believe that the defense had had adequate time to review the records.

Third, a very small part of the records at issue were relevant to [Scott's] defense. Those included [Doyle's] toxicology report, the scale of [Doyle's] injuries, and the results of the DNA test. [Scott] and his attorney had more than enough time to review them[,] and in fact[,] the defense [] used them during the trial. Thus, the defense cannot show that it was prejudiced as a result of the refusal to grant a continuance.

Finally, the Commonwealth was ready to proceed to trial. Its case relied upon a witness who was essentially homeless and had difficulty getting to the court house. The [c]ourt was well aware that if the matter was continued[,] it was likely that [Doyle] would not appear at another listing. …

Trial Court Opinion, 7/10/19, at 5-6 (citations to record omitted).

Upon review, we discern no abuse of the trial court's discretion in denying Scott's Motion for continuance. The trial court provided defense counsel additional time to review the only document specifically identified among the 700 pages of medical records, *i.e.*, the toxicology report. Moreover, Scott has failed to explain how additional time to review the toxicology report would have aided his defense, or to specifically identify any other beneficial documents contained in his medical records that counsel was

unable to review.  **_See Broitman_**, **_supra_**.  Therefore, we cannot grant Scott relief on this claim.

In his third claim, Scott asserts that the verdict was against the weight of the evidence.  Brief for Appellant at 21.  Scott claims that on the night of the stabbing, Doyle was drunk, and had smoked crack cocaine.  **_Id._** at 22; **_see also id._** at 23 (wherein Scott asserts that Doyle's testimony was unreliable).  Scott also points to inconsistencies in Doyle's statements, to the treating physicians at the hospital and the police, regarding whether he knew his assailant and what the assailant looked like.  **_Id._** at 22-23.  Additionally, Scott points out that the trial judge knows Officer Crusemire's father, and

exhibited bias as a result of this connection.[6] *Id.* at 23.  Scott claims that his

"numerous health problems make it difficult to believe he could have chased

after [Doyle], punched, and stabbed him so aggressively." *Id.* at 24.

As this Court has recognized,

[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.  Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.  One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.

*Commonwealth v. Talbert*, 129 A.3d 536, 545-46 (Pa. Super. 2015)

(citation omitted); *Commonwealth v. Smith*, 146 A.3d 257, 265 (Pa. Super.

2016) (stating that "[i]n order for an appellant to prevail on a challenge to the

_____

[6] The following exchange occurred after Officer Crusemire was sworn in as a witness:

The Court:  How you doing?  All right?  Who is your father?

[Officer Crusemire]:  He's James.

[Q]:  Is he a judge?

[A]:  Yes, Judge James –

….

[Q]:  Yeah, I went to school with him.  Tell your dad I said hello.

N.T., 11/20/18, at 45-46.

- 14 -

weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." (citation omitted)). Further, "in instances where there is conflicting testimony, it is for the jury to determine the weight to be given the testimony. The credibility of a witness is a question for the fact-finder." ***Commonwealth v. Hall***, 830 A.2d 537, 542 (Pa. 2003) (citation omitted).

To the extent that Scott asks this Court to re-assess Doyle's credibility, or the weight to be assigned his testimony, we are unable to do so. ***See Hall***, ***supra***; ***see also Commonwealth v. Blackham***, 909 A.2d 315, 320 (Pa. Super. 2006) (stating that "[i]t is not for this Court to overturn the credibility determinations of that fact-finder."). Further, as the trial court aptly noted,

> [a]lthough the victim had ingested intoxicating substances …, this [c]ourt concluded that [Doyle] testified credibly and had been assaulted as he claimed. [Doyle] knew [Scott] prior to the incident, identified [Scott] by name at the hospital as his assailant, gave a description of [Scott], and [Doyle's] version of events coincided with the physical evidence, which included a knife found in [Scott's] possession that matched [Doyle's] description of the weapon.

Trial Court Opinion, 7/10/19, at 8.

Regarding Scott's claim that the trial judge knows Officer Crusemire's father, our review reveals no obvious bias based on this brief exchange, nor does the record reflect that the trial court afforded Officer Crusemire's testimony any undue weight as a result. Upon review, we cannot conclude that the evidence presented at trial was "so tenuous, vague and uncertain" as to shock the conscience of the court. ***See Smith***, ***supra***. We discern no

- 15 -

abuse of the trial court's discretion in determining that the verdict was not against the weight of the evidence. Thus, Scott is not entitled to relief on this claim.

Judgment of sentence affirmed.

Judge McLaughlin joins the memorandum.

Judge Dubow files a dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/20