J-S19023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
         v.   :
  :
  :
STEFAN MITCHELL   :
  :
       Appellant   :   No. 2243 EDA 2021

Appeal from the Judgment of Sentence Entered September 23, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001086-2019

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                **FILED JUNE 27, 2022**

Appellant, Stefan Mitchell, appeals from the judgment of sentence entered on September 23, 2021, in the Criminal Division of the Court of Common Pleas of Philadelphia County.  We affirm.

On January 26, 2019, Appellant was arrested and charged with attempted murder, aggravated assault, several firearms offenses, and other related crimes for shooting Tyquan Pate (Pate) 10 times after Pate refused to purchase a firearm for Appellant.[1]  At the conclusion of trial on June 6, 2021, Appellant was found guilty of attempted murder, aggravated assault, possession of a firearm without a license, possession of an instrument of

---

[*] Former Justice specially assigned to the Superior Court.

[1] We incorporate the trial court's thorough recitation of the facts of this case as if it were set forth in full in this memorandum.  **See** Trial Court Opinion, 12/2/21, at 1-12.

crime, possession of a firearm on the public streets of Philadelphia, and burglary.[2]

On June 16, 2021, defense counsel presented a motion for judgment of acquittal on certain charges that were not addressed at trial. The trial court granted this motion and discharged Appellant on the following offenses: discharge of a firearm into occupied structure, terroristic threats, simple assault, recklessly endangering another person, and criminal trespass. On September 23, 2021, the court imposed the following sentence: 10-20 years' incarceration for attempted murder; 10-20 years' incarceration for burglary (concurrent to attempted murder); two and one-half to five years' incarceration for carrying a firearm on the public streets of Philadelphia (consecutive to attempted murder); seven years of reporting county probation for possession of a firearm without a license (consecutive to attempted murder); and, no further penalty for possessing an instrument of crime and for aggravated assault. *See* Trial Court Opinion, 12/2/21, at 1-2.

Appellant filed a timely notice of appeal on October 5, 2021. The following day, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied on October 27, 2021. The trial court issued its Rule 1925(a) opinion on December 2, 2021.

Appellant's brief raises the following questions for our review.

---

[2] 18 Pa.C.S.A. §§ 2502 and 901, 2702(a), 6106(a)(1), 907(a), 6108, and 3502(a)(1), respectively.

Was the evidence insufficient to sustain the charges of attempted murder and aggravated assault because the testimony of complainant and witness, Aigner Cherry, were inconsistent?

Was the evidence insufficient to sustain the charges of attempted murder and aggravated assault because there was no testimony of a medical professional to injuries sustained by the complainant?

Was the evidence insufficient to sustain the firearms charges of firearms not to be carried without a license, carrying firearms in public, and possession of an instrument of crime because no firearm was recovered, and no gunshot residue was located on any recovered clothing[?]

Appellant's Brief at 8 (complete capitalization omitted).

In his first issue, Appellant argues that "[t]here was insufficient evidence to sustain the conviction[s for] attempted murder and aggravated assault because of inconsistent testimony of Aigner Cherry [(Cherry), Appellant's girlfriend and sister of the complainant,] and [Pate, the complainant]." **See** Appellant's Brief at 12. The trial court rejected this argument in its Rule 1925(a) opinion and concluded that the Commonwealth introduced sufficient evidence to prove the elements of attempted murder and aggravated assault beyond a reasonable doubt. **See** Trial Court Opinion, 12/2/21, at 13-17. After setting forth the correct standard of review, as well as the principles of law identifying the legal elements of attempted murder and aggravated assault, the trial court determined that the trial testimony of Cherry and Pate provided sufficient evidentiary support to sustain Appellant's convictions. After careful review, we agree with the trial court's conclusions and adopt its rationale as our own. Accordingly, Appellant's first issue fails.

In his second claim, Appellant contends that "[t]here was insufficient evidence to sustain [Appellant's] conviction[s for] attempted murder and aggravated assault because there was no testimony of a medical professional giving their expert opinion of 'serious bodily injury.'" Appellant's Brief at 12. This claim is meritless.

We have described the elements of attempted murder as follows.

Criminal attempt is separately codified at 18 Pa.C.S.A § 901, which states, "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a).

Criminal attempt is a specific-intent crime. Thus, attempted murder require[s] a specific intent to kill. **Commonwealth v. Robertson**, 874 A.2d 1200, 1207 (Pa. Super. 2005) ("For the Commonwealth to prevail in a conviction of criminal attempt to commit homicide, it must prove beyond a reasonable doubt that the accused with a specific intent to kill took a substantial step towards that goal.").

**Commonwealth v. Palmer**, 192 A.3d 85, 88 (Pa. super. 2018), *appeal denied*, 204 A.3d 924 (Pa. 2019).

Moreover, our Supreme Court requires the following proof to convict a defendant of aggravated assault.

A person may be convicted of aggravated assault graded as a first degree felony if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1). "Serious bodily injury" means "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. "A person commits an attempt when, with intent to commit a specific crime, he does any

- 4 -

act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). An attempt under § 2702(a)(1) requires a showing of some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury. ***Commonwealth v. Alexander***, 383 A.2d 887, 889 (Pa. 1978).

"A person acts intentionally with respect to a material element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S.A. § 302(b)(1)(i). . . . The intent to cause serious bodily injury may be proven by direct or circumstantial evidence. ***Commonwealth v. Hall***, 830 A.2d 537, 542 (Pa. 2003).

***Commonwealth v. Matthew***, 909 A.2d 1254, 1257 (Pa. 2006) (parallel citations omitted).

In this case, Pate testified that Appellant shot him multiple times and the Commonwealth presented to the jury a stipulation between the parties reflecting the gunshot injuries Pate sustained following Appellant's armed assault. Moreover, during his testimony, Pate showed the trial court and the jury the gunshot wounds he sustained in his forearm, his left bicep, left torso, back, left leg, hip, groin, buttocks, shin, and right leg. ***See*** Trial Court Opinion, 12/2/21, at 6, *citing* N.T. Trial, 6/3/21, at 204-213. Pate's testimony easily established, beyond a reasonable doubt, that Appellant acted with an intent to kill and inflicted serious bodily injury when he carried out his near-lethal attack on Pate.[3]

---

[3] Pate explained during his testimony that a bullet fired by Appellant remains lodged near Pate's spine and that he could become paralyzed if it is dislodged. ***See*** Trial Court Opinion, 12/2/21, at 6, *citing* N.T. Trial, 6/3/21, at 214-213 and 224-232.

Our rules of evidence permit opinion testimony where a witness, qualified as an expert, possesses specialized knowledge beyond that of an average person, where the expert's specialized knowledge will assist the factfinder to understand the evidence or determine a fact in issue, and where the expert's methodology is generally accepted in the relevant field. *See* Pa.R.E. 702(a)-(c). These rules are understood to be permissive, not mandatory, and Appellant has not cited case law that compels expert testimony in this context. Where, as here, the facts in issue do not involve specialized knowledge, expert testimony is not required. Pate's testimony, together with the display of his wounds at trial, provided a sufficient evidentiary basis for the jury to find both an intent to kill and serious bodily injury. Consequently, Appellant is not entitled to relief on his second claim.

In his third issue, Appellant asserts that the evidence is insufficient to support his firearms convictions because the Commonwealth failed to prove that he constructively possessed a firearm. *See* Appellant's Brief at 17. In its Rule 1925(a) opinion, the trial court carefully reviews the testimony at trial and concludes that, "the evidence was sufficient [] to show that [Appellant] constructively possessed a gun." Trial Court Opinion, 12/2/21, at 19. We concur in the trial court's determination and adopt its rationale as our own. Hence, Appellant's third issue fails.

We have carefully reviewed the certified record, the submissions of the parties, and the opinion of the trial court. Based upon our review, we conclude

that Appellant is not entitled to relief. We have adopted the trial court's opinion as our own as to issues one and three and concluded separately that Appellant cannot prevail on issue two. Because we have adopted the trial court's opinion in part, the parties are instructed to include a copy of the trial court's opinion with all future filings that pertain to our disposition of this appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/27/2022

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

FILED

2021 DEC -2 PM 3: 36

OFFICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-1086-2019 |
| v. | : | 2243 EDA 2021 |
| | : | 2346 EDA 2021 |
| STEFAN MITCHELL | : | |

OPINION

I.    Procedural History

On January 26, 2019, Defendant, Stefan Mitchell, was arrested and charged with Aggravated Assault, Firearms Not To Be Carried Without License, Discharge of A Firearm Into Occupied Structure, Carry Firearms Public In Philadelphia, Possession Instrument of Crime With Intent, Terroristic Threats With Intent To Terrorize Another, Simple Assault, Recklessly Endangering Another Person, Burglary-Overnight Accommodations; Person Present, Bodily Injury Crime, Criminal Trespass- Breaking Into Structure, and Criminal Attempt-Murder. As a result of the evidence presented to the jury, on June 6, 2021, Defendant was found guilty of attempted murder, aggravated assault, possession of a firearm without a license, Possession of an instrument of crime, possession of a firearm on the streets of Philadelphia, and burglary. Because some of the charges were not presented to the jury, on June 16, 2021, defense counsel requested a Motion of Acquittal which the court granted. On September 23, 2021, Defendant was sentenced to 10-20 years incarceration for criminal attempted murder, 10-20 years incarceration for burglary to run concurrent to attempted murder, 2 ½ to 5 years incarceration for carrying a firearm to run consecutive to the criminal attempt murder, 7 years probation as to the

1

*ARR 1*

*- EXHIBIT 1A*                    -

firearms not to be carried without a license, and no further penalty on the remaining charges. Based on the jury's finding and this court sentence, via the docket, Defendant filed a notice of appeal to Superior Court and a notice of appeal to Commonwealth Court on October 5, 2021. The Court filed a 1925(b) Order on October 6, 2021. On October 27, 2021 Defendant filed Statements of Matters Complained on Appeal. Defendant's appeal was docketed on November 10, 2021 and November 29, 2021, based on an issue of Defendant's appeal being sent to Commonwealth Court and having to be transferred back. The court's staff spoke with the Appeals Unit of the Court of Common Pleas to get the appeal moved to the proper court; the court staff responded that they will send the appeal to the Superior Court. Further, on October 19, 2021, the Commonwealth Court Ordered this matter to be sent to Superior Court.

II. Facts

On June 2, 2021, Stefan Mitchell pled not guilty to the charges of Aggravated Assault, Firearms Not To Be Carried Without License, Discharge of A Firearm Into Occupied Structure, Carry Firearms Public In Philadelphia, Possession Instrument of Crime With Intent, Terroristic Threats With Intent To Terrorize Another, Simple Assault, Recklessly Endangering Another Person, Burglary-Overnight Accommodations; Person Present, Bodily Injury Crime, Criminal Trespass- Breaking Into Structure, and Criminal Attempt-Murder. N.T. 06/02/21 at 12-14. Several days before the incident, Defendant and Complainant, Tyquan Pate, engaged in a text conversation. N.T. 06/03/21 at 162; 165-180. Complainant is the uncle of Defendant's son and the brother of Defendant's girlfriend. Defendant's text from a

2 ARR 2

"267-810" number showed Defendant asking Complainant if he knew anyone who was 21 years of age who could purchase a gun for him because Defendant was under the age of 21. N.T. 06/03/21 at 162-163;165. Mr. Pate agreed to purchase the gun for him. N.T. 06/03/21 at 162. Several days later, on January 22, 2019, Defendant was getting dressed in his all black Allied Security work uniform and badge when Mr. Pate let Defendant know he was not going to purchase the gun for Defendant. N.T. 06/02/21 at 58-59; N.T. 06/03/21 at 162. Mr. Pate reasoned that if anything were to happen while using the gun, he would likely be the one in trouble because the gun is attached to his name. N.T. 06/03/21 at 181. Defendant responded, "yo, you should've kept it a hundred with me, and told me you aint want to do Niggas. Not playing. Niggas dying out here. You think I'm fuckin' playing." Id. at 180. Mr. Pate responded to his text with a laughing emoji. Id. After receiving Mr. Pate's text message with the emoji, Defendant responded with, "you think it's funny? All right. Cool, bro," with an emoji with the sunglasses. Id. at 186. Mr. Pate responded "All right, Cannon. You be safe," meaning that was the end of the conversation. Id.

While receiving these text messages from Mr. Pate, Defendant was at his residence with his girlfriend, complainant's sister, Ms. Cherry, whom reside together with their son. N.T. 06/02/21 at 56. Ms. Cherry watched Defendant as the correspondence unfolded between Defendant and her brother, Mr. Pate, and saw that Defendant was visibly angry. Id. at 59-60. After the correspondence with her brother, Defendant, Stefan Mitchell, told Ms. Cherry that he was going to go shoot her brother, Mr. Pate, because he felt disrespected. Id. at 61;70. Defendant then made Ms. Cherry call her mother to make sure she or anyone else would not be at the residence

3

*ARR 3*

with her brother. Id. 61-63. Similarly, Defendant demanded Ms. Cherry to give him the keys to Mr. Pate's residence located at the 6500 block of North 17th Street, Philadelphia, PA; this is the residence that he and his girlfriend previously resided. Id. at 63-65. Though Defendant use to live at that particular residence, he never had a key and always had to use Ms. Cherry's key. N.T. 06/03/21 at 187-189. Ms. Cherry refused to give Defendant the keys to the property. N.T. 06/02/21 at 65-66. He then threatened Ms. Cherry, the mother of his son, by telling her he was going to shoot the window. Id. Ms. Cherry knew that Defendant had a firearm because she could hear the clicking sound of the black glock being racked. Id. at 66. Upon hearing that Defendant had a gun, she told Defendant where the keys were. Id. at 65. Moments later, Defendant drove to Mr. Pate's residence in an Infinity G35 sedan. Id. at 69. After Defendant left their shared residence, Ms. Cherry checked under the bed to see if Defendant took the gun and saw that the firearm was gone. Id. at 105.

Mr. Pate was in his residence getting his dog, Pepper, ready for a walk. N.T. 06/03/21 at 161. Defendant unlocked the front door and walked inside the house. Id. at 186-190. Mr. Pate heard someone open the door and thought it was his sister or father. Id. at 191. When Defendant, still in his black work uniform, enters into the residence, he asks Mr. Pate if he wants to rumble. Id. Mr. Pate ignores Defendant's question, walks by him, towards the front door, and starts to put the leash on Pepper. Id. at 192-193. Defendant repeats the question asking if Mr. Pate wants to rumble. Id. at 193. Mr. Pate gives in and tells him "okay. Come out side." Id. Consequently, Mr. Pate hears a pop, turns around, and then realizes that Defendant, Stefan Mitchell, is shooting him with a black semi-automatic handgun. Id. at 193. Mr. Pate tries to duck

*ARR 4*

4

for cover as soon as he realizes he is being shot and raised his arm to protect his face. Id. at 196. However, instead of ducking for cover, Mr. Pate realizes there is a hole in his jacket and he is falling over. Id. As Mr. Pate falls to the ground, Defendant continues to shoot him. Id. at 197. Mr. Pate is pleading with Defendant to stop. Id. at 197. While begging him to stop, Defendant repeatedly tells Mr. Pate to "shut the fuck up." Id. at 197-198. Defendant finally stops and tells Mr. Pate if he tells anyone, he will come back and shoot Mr. Pate's family. Id. at 199.

Once Defendant leaves the residence through the back door, Mr. Pate calls 911 and tells the dispatcher that a light-skinned male, dressed in all black and wearing a mask, shot him. Id. at 215;219. Mr. Pate maintains he did not reveal Defendant's identity because he was just shot and thought Defendant may actually shoot his family. Id. at 215-217. Sergeant Marcus O'Shaughnessy receives a report of the shooting over the radio and, upon arrival, helps Mr. Pate into the police vehicle to be transported to the hospital. N.T. 06/02/21 at 43. The other officers at the scene, Detective James Poulos, and his partner, Detective Murray, processed the scene of the shooting, laid down evidence markers, and swabbed for DNA. Id. at 12. Detective also took photos of the blood on the floor with multiple bullet holes in the ground from Stefan Mitchell's gun. Id. at 20. Moreover, the detectives found gun casings at the scene which forensic scientist, Natalie Murphy, later confirmed were the gun casings fired from the same gun. Id. at 140. Detective also found unfired cartridges from that same gun. Id. at 23-24;92. Further, Detective recovered Ring doorbell camera footage from the incident showing Defendant in his security uniform exiting an Infinity G35 sedan, then moments later exiting the rear of the property. Id. at 40-

5

/ARR 5

45. Additionally, after executing a search warrant at the Defendant's property, Defendant's uniform items with his Allied Security badge were recovered from the property. Id. at 52. Further, after executing the search warrant for Mr. Pate's phone, Detective recovered text messages of the exchange between Defendant and Mr. Pate, which to the officer deemed to be an issue about a firearm. Id. at 59-60;68. After being rushed to the nearest hospital by police, Defendant was put into a medically induced coma. N.T. 06/02/21 at 43-44; Id. at 200-202. Once Mr. Pate was out of the coma, the police spoke with him at the hospital, but he was still too afraid to tell the officers that it was Defendant who shot him because he was scared for the safety of his family. N.T. 06/03/2021 at 217. After speaking with police, the officers stepped out of the room, and Mr. Cherry, Mr. Pate's father and Defendant's son's grandfather, entered the hospital room to speak with him. Id. at 217-218. Mr. Pate tells his father that Defendant, Stefan Mitchell, shot him. Id. at 218. Because of his father urging him to do the right thing and tell the truth, Mr. Pate lets the police know that it was Defendant who shot him. Id. at 218-219. During his testimony, Mr. Pate showed his scars and gunshot wounds to the court and jury, with both the District Attorney and Defense counsel standing next to the witness booth. Id. at 205. Mr. Pate showed the gunshot wounds to the forearm, left bicep, left torso, back, left leg, hip, groin, butt, shin, and right leg. Id. at 204-213. With the more private areas, Mr. Pate motioned to where he was shot but did not show the jury those wounds. Id. Further, Mr. Pate disclosed that he has other life-long injuries, and there is still a bullet lodged near his spine, and he can potentially be paralyzed if they moved the bullet. Id. at 214-213; 224-232. After Mr. Pate's testimony, the District Attorney read a stipulation

6.



by and between counsel of the certified medical records as to Mr. Pate being shot ten times and the injuries that resulted from the shooting with no objection from Defense counsel. N.T 06/04/21 at 28-30.

After leaving Mr. Pate's residence, Defendant returned back to the residence that he shares with Ms. Cherry. N.T. 06/02/21 at 72. Defendant knocks on the window of the residence, wearing the same work uniform, and climbs through the window to enter into the residence. Id. at 72-74. Defendant with panicked behavior asks Ms. Cherry to help him hide the gun in his waistband and to call his grandmother. Id. at 73-74. Ms. Cherry maintains she does not know where the gun is today. Id. at 75. Defendant then changed his clothes and removes the gun from his waistband. Id. at 74-75. While Ms. Cherry dialed his grandmother and handed Defendant the phone, she asked what happened. Id. at 75. Defendant remained silent and then moments later retorted, "he's still breathing." Id. Defendant then asks his grandmother to come and take him, Ms. Cherry, and their son to his grandmother's house. Id. at 75-76;93. Once at the grandmother's house, Defendant gathers his family members into the bathroom one by one to speak with them. Id. at 76. Once a family member went into the bathroom to speak with Defendant, they left the bathroom shocked, quiet, with big eyes. Id. 76-77. Ms. Cherry decides not to call the police while at the grandmother's residence because she thinks that if Defendant can shoot his son's uncle, then he can shoot his son's mother too. Id. at 77-78. While visiting her brother at the hospital, she speaks to the police and gives them a different account of their whereabouts because Defendant coached her on what to say; she is still afraid of Defendant because he threatened her with killing her and her whole family. Id. 79-82;94-86;108. Defendant

7

*ARR 8*

eventually tells Ms. Cherry what happened in her family home and how he shot her brother. Id. at 82. However, later Ms. Cherry lets the police know what truly happened to her brother, Mr. Pate, because it is the right thing to do. Id. at 83.

While investigating Defendant, an officer spotted Defendant in a Dodge Charger with a passenger who was exiting the car and getting into Defendant's Infinity. N.T. 06/03/2021 at 125-126. Defendant was immediately arrested and later transported to the police station where he spoke to the officers voluntarily. Id. at 81. After speaking with Defendant, he admitted to owning the vehicle shown in the Ring camera video, admitted to working for Allied Security, and described his uniform as a dark jacket, boots, and white shirt. Id. at 72-73. Further, there was a search warrant executed for Defendant's claimed vehicle, driver's license, and registration showing proof that it was legitimately registered to Defendant. Id. at 78.

After the court colloquied Defendant on his rights to testify, Defendant gives his testimony. N.T. 06/04/2021 at 34-40;60. Defendant rebuts the entirety of the testimony given in the case and asserts that he did not ask Mr. Pate for a gun but for money to buy alcohol for a party that he wanted to throw. Id. at 73. Further, though Defendant admits that is him on the Ring camera video shown to the jury; there was a third person, Rock, who Defendant claims was inside the house because of alleged drug money that Mr. Pate owed him, and Rock shot Mr. Pate. Id. at 62-64. It was not Defendant. Id. Moreover, the reason Defendant was at the property in question is to give Mr. Pate money to fix his debt with Rock. Id. However, Defendant alleges the drug money that Mr. Pate asks for in the text exchange is on Defendant's second cell phone and not from the phone text thread that was presented to the jury. Id. at 64.

8

*ARR 9*

Defendant never mentions a second phone to the police because they never asked him if he had an additional phone. Id. at 91-93. Also, Defendant admits that he is on the Ring camera video exiting the rear of the property and getting into his vehicle. Id. at 65. Defendant left the rear of the property, drove home, and told Ms. Cherry, Mr. Pate's sister, that her brother had just been shot, but claimed to not know who shot him or whether her brother was dead. Id. at 66. The day after the shooting occurred, Defendant claims to have gone to the hospital with Ms. Cherry and tried to tell her family what happened but could not because everyone was crying, but Defendant did disclose what happened to Mr. Pate to his family members. Id. at 68. Days later, Defendant was arrested but did not give his version of what happened because he was receiving death threats from a restricted number. Id. at 68. If he told what happened, they were going to kill him. Id. However, the first time he mentions this account is before the jury and this trial court during his hearing two years later. Id. at 90-91. In contrast, Detective Poulos rebuts Defendant's testimony by stating that the texts recovered never showed Mr. Pate asking for a favor or money, never mentions anything about drugs, nor there was nothing discovered within his investigation that showed that Mr. Pate had any issues with members of the community Id. at 96-97. Additionally, there is no evidence of a third person being inside the property nor evidence of a struggle besides Mr. Pate being shot near the front door. Id. at 104-105. Detective Poulos maintains that the Ring camera video footage was never edited. Id. at 108. Further, there is no recovery nor a mention of a second phone from Defendant. Id. at 98. Also, Defendant never mentions to Detective that he was being threatened or harassed. Id. Mr. Pate also rebuts Defendant's account by stating he never asked

9

ARR 10

Defendant for any money to pay off any alleged drug debt, there was never a third party in the property, there was never any struggle inside the property or even a struggle with Defendant. Id. at 111-113. Further, Mr. Pate is unaware of a second phone that Defendant claimed to have owned and of any hotel party that Defendant was allegedly planning where he needed someone over the age of 21 to purchase alcohol, but the texts were, in fact, showing Defendant asking him to purchase a gun. Id. at 110;113. Additionally, Mr. Pate maintains that no one would respond in the text messages the way Defendant did over alcohol. Id. at 114. After hearing all of the evidence presented, the counsels' closing arguments, and being instructed of the law by the court, the jury found Defendant, Stefan Mitchell, guilty of attempted murder, aggravated assault, possession of a firearm without a license, possession of an instrument of crime, possession of a firearm on the streets of Philadelphia, and burglary. N.T. 06/07/21 at 36-38.

Days later, after Defendant being found guilty, Defense counsel motioned for a judgment of acquittal on the five charges that were not presented to the jury which are as follows: discharge of a firearm, terroristic threats, simple assault, recklessly endangering another person, and criminal trespass into a structure. N.T. 06/16/21 at 4-5. The court granted the motion. Id. at 8. On September 23, 2021, Defendant, Stefan Mitchell, was before this court for sentencing. During the hearing, Defense counsel makes argument as to how important family is to Defendant including the fact that family is showing support by coming to Defendant's sentencing hearing. N.T. 09/23/21 at 8-14. However, Commonwealth rebuts the entirety of family being important with the fact that Mr. Pate, Defendant's son's uncle, Ms. Cherry,

10

ARR 11

Defendant's child's mother, and Mr. John Cherry, Defendant's son's grandfather, are also like family and on the day of the shooting, Defendant decided to shoot family. Id. at 17-21. Further, Mr. Cherry maintains that the unfortunate thing about this shooting is that his grandson, Ms. Cherry and Defendant's son, will feel the brunt of Defendant's actions against family. Id. at 20. Moreover, Defendant knew he had a son and was not thinking about how his actions would affect his son when he shot his son's uncle, Mr. Pate. Id. After hearing the presentation from both the District Attorney and Defense counsel, Defendant gave his allocution and stated that he is ready to go home and will not retaliate and that he wants to be a father to his son. Id. at 32. However, only after his defense counsel leaned over to speak with Defendant as he was making his allocution, Defendant apologized to Mr. Pate and Mr. Cherry. Id. at 33. After hearing everything presented during the sentencing hearing, the court noted that it was interesting that Defense counsel presented how much Defendant respected family; however, it was Defendant who got upset and decided to shoot family, his girlfriend's brother and his son's uncle. Id. at 34-35. Further, the court was even more concerned hearing the audio of the video that was played to the jury with his son's uncle pleading for his life with Defendant telling him to "shut the fuck up." Id. at 35. Moreover, the court is aware that after the shooting, when Ms. Cherry asked about the wellbeing of her brother, he told her that he was still alive. Id. However, the only reason Ms. Cherry never reported Defendant was because he threatened her and her family with death, which for the court is also Defendant's family. Id. at 35-36. With taking into account the aggravating factors of the protection of the public, the Defendant's danger with propensity and the mitigating factor of Defendant's

11

ARR 12

rehabilitative needs, the court sentenced Defendant to 10-20 years incarceration for criminal attempted murder, 10-20 years incarceration for burglary to run concurrent to attempted murder, 2 ½ to 5 years incarceration for carrying a firearm to run consecutive to the criminal attempt murder, 7 years probation as to the firearms not to be carried without a license. Id. at 39. The court sentenced Defendant to no further penalty on the remaining charges. Id.

III. Matters Complained of on Appeal

Appellant's timely Rule 1925(b) Statement raises an allegation of error on the part of the jury having found Defendant guilty. This court's opinion will address these allegations:

1. The evidence was insufficient to sustain the charges of attempted murder and aggravated assault because the testimony of Complainant was inconsistent.

2. The evidence was insufficient to sustain the charges of attempted murder and aggravated assault because the testimony of witness, Aigner Cherry, was inconsistent.

3. The evidence was insufficient to sustain the charges of attempted murder and aggravated assault because there was no testimony of a medical professional to any injuries sustained by the Complainant.

4. The evidence was insufficient to sustain the firearm charges of firearms not to be carried without a license, discharge of a firearm into an occupied structure, carrying firearms in public and possession of an instrument of a crime because no firearm was recovered and no gunshot residue was located on any recovered clothing.

12

ARR 13

IV. Standard

The Appellant's claims brought forth are whether there was sufficient evidence to have found Defendant, Stefan Mitchell, guilty of attempted murder, aggravated assault, and firearm related charges. The standard in which a Court views sufficiency of evidence claims are as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. Commonwealth v. Troy, 2003 PA Super 340, 832 A.2d 1089, 1092 (2003) (citations omitted). We emphasize that it is not our role, as an appellate court, to substitute our judgment for that of the fact-finder. Commonwealth v. Lutes, 793 A.2d 949, 960 (Pa.Super.2002). "It is the function of the jury to evaluate evidence adduced at trial to reach a determination as to the facts, and where the verdict is based on substantial, if conflicting evidence, it is conclusive on appeal."

Com. v. Reynolds, 835 A.2d 720, 725-26 (2003). Thus, using this standard, the Court will find that there was sufficient evidence to have found Defendant guilty.

V. Discussion

13

ARR 14

1. The evidence is sufficient to sustain attempted murder and aggravated assault charges based on the testimonies from Complainant and Ms. Cherry.

Appellant argues that the evidence is not sufficient to sustain an attempted murder and aggravated assault charge based off of inconsistent testimonies from Complainant, Mr. Pate, and Ms. Cherry. The court disagrees. The Superior Court has stated:

> Criminal attempt is separately codified at 18 Pa.C.S. § 901, which states, "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). Criminal attempt is a specific-intent crime. Thus, attempted murder required a specific intent to kill. Commonwealth v. Robertson, 874 A.2d 1200, 1207 (Pa.Super. 2005) ("For the Commonwealth to prevail in a conviction of criminal attempt to commit homicide, it must prove beyond a reasonable doubt that the accused with a specific intent to kill took a substantial step towards that goal.").

Commonwealth v. Palmer, 192 A.3d 85, 88 (2018). Further, the Pennsylvania Supreme Court has stated that a Defendant may be convicted of aggravated assault by doing the following:

> A person may be convicted of aggravated assault graded as a first degree felony if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life...." 18 Pa.C.S. § 2702(a)(1). "Serious bodily injury" means "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

Com. v. Matthew, 909 A.2d 1254, 1257 (2006). Further, the Pennsylvania Supreme Court has held that "'A person acts intentionally with respect to a material element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result....'" 18 Pa.C.S. § 302(b)(1)(i)'" and

14

ARR 15

"'the intent to cause serious bodily injury may be proven by direct or circumstantial evidence. Commonwealth v. Hall, 574 Pa. 233, 830 A.2d 537, 542 (2003)." Com. v. Matthew, 909 A.2d 1254, 1257 (2006).

Here in this matter, Tyquan Pate, Complainant, and Defendant, Stefan Mitchell, engaged in a text conversation for Mr. Pate to purchase Defendant a gun. N.T. 06/03/21 at 162. Later Mr. Pate notified Defendant that he would not be purchasing the gun. N.T. 06/02/21 at 58-59; N.T. 06/03/21 at 162. Once the text message conversation concluded, Defendant told Ms. Cherry, Defendant's girlfriend and Complainant's sister, that he was going to go to Mr. Pate's residence to shoot her brother and asked Ms. Cherry to call her mother to make sure that no one else was home. N.T. 06/02/21 at 61-63;70. Once Defendant arrived at Mr. Pate's residence, he asked Mr. Pate if he wanted to fight, and then proceeded to shoot him several times. N.T. 06/03/21 at 192-197. While being shot, Mr. Pate begs Defendant to stop, which Defendant retorts "Shut the fuck up." Id. Defendant then threatened Mr. Pate with killing him and his family if he told who shot him which caused Mr. Pate to give a different description of the man who shot him to the dispatcher. Id. at 215-217. After having left Mr. Pate's residence, Defendant returned back to the residence he shared with Ms. Cherry and told her that her brother, Mr. Pate, was still breathing. N.T. 06/02/21 at 72-75. Once Ms. Cherry was interviewed by police, she gave a different account of her and Defendant's whereabouts because Defendant threatened to kill her and her family. Id. at 79-82;94-86;108. Ms. Cherry asserted that if Defendant can shoot his son's uncle, then he could shoot his son's mother too. Id.

15

ARR 16

It is clear, through the testimony of Ms. Cherry and Mr. Pate, that the evidence was sufficient to conclude that Defendant, Stefan Mitchell, committed the criminal offense of attempted murder. Stefan had the intent to kill Defendant which was proven through Ms. Cherry's testimony of Defendant telling her that he was going to kill her brother and instructing her to call her mother to ensure that no one else would be at the residence when Defendant was going to kill him. Further, it is clear through Mr. Pate's testimony that Defendant took a substantial step to kill Mr. Pate by after asking Mr. Pate if he wanted to fight, pulling out a gun, and shooting him ten times all the while Mr. Pate is begging for his life. Additionally, through Mr. Pate's testimony, and the evidence presented to the jury, it was sufficient to convict Defendant of aggravated assault because Defendant clearly caused Mr. Pate serious bodily injury, as shown through the stipulated medical evidence and Mr. Pate's testimony concerning his injuries. Also, he acted with an extreme indifference to the value of human life when shooting Mr. Pate as he begged for his life while retorting for Mr. Pate to "shut the fuck up." Furthermore, Defendant does not specify what testimony of Ms. Cherry and Mr. Pate was inconsistent which leaves the court to speculate. However, the jury, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. Com. v. Reynolds, 835 A.2d 720, 725–26 (2003). Thus, based on the testimony of Ms. Cherry and Mr. Pate, the jury found the evidence to be sufficient to find Defendant guilty of both attempted murder and aggravated

16

*ARR 17*

assault regardless of Defendant claiming that there was testimony that was supposedly inconsistent.

2. The evidence was stipulated and thus is sufficient because of lack of an objection. Appellant argues that the evidence was insufficient to sustain the charges of attempted murder and aggravated assault because there was no testimony from a medical professional as to any injuries sustained by Complainant. However, the court disagrees. The Superior Court has stated

> Criminal attempt is separately codified at 18 Pa.C.S. § 901, which states, "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). Criminal attempt is a specific-intent crime. Thus, attempted murder required a specific intent to kill. Commonwealth v. Robertson, 874 A.2d 1200, 1207 (Pa.Super. 2005) ("For the Commonwealth to prevail in a conviction of criminal attempt to commit homicide, it must prove beyond a reasonable doubt that the accused with a specific intent to kill took a substantial step towards that goal.").

Commonwealth v. Palmer, 192 A.3d 85, 88 (2018).Further, the Pennsylvania Supreme Court has stated that a Defendant may be convicted of aggravated assault by doing the following:

> A person may be convicted of aggravated assault graded as a first degree felony if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life...." 18 Pa.C.S. § 2702(a)(1). "Serious bodily injury" means "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

Com. v. Matthew, 909 A.2d 1254, 1257 (2006). Further the Pennsylvania Supreme Court has held that "'A person acts intentionally with respect to a material element of an offense when ... it is his conscious object to engage in

17

ARR 18

conduct of that nature or to cause such a result...." 18 Pa.C.S. § 302(b)(1)(i)'" and "'the intent to cause serious bodily injury may be proven by direct or circumstantial evidence. Commonwealth v. Hall, 574 Pa. 233, 830 A.2d 537, 542 (2003)." Com. v. Matthew, 909 A.2d 1254, 1257 (2006)

Here in this matter, Mr. Pate testified to the injuries that he had incurred after being shot by Defendant, Stefan Mitchell. After testifying about the injuries, the Commonwealth read a stipulation by and between counsels of the certified medical records as to Mr. Pate's injuries with no objection from defense counsel. N.T 06/04/21 at 29-30. Furthermore, the court instructed the jury to regard a stipulation between counsels as a fact proven. N.T. 06/07/21 at 31. Therefore, the jury is free to believe all, part, or none of the evidence, coupled with the court's instruction regarding stipulations, and a lack of objection from defense counsel. Therefore, there was sufficient evidence to prove Mr. Pate's injuries were sustained from Defendant's, Stefan Mitchell, actions.

3. There is sufficient evidence for the firearm related charges.

Appellant argues that the evidence was insufficient to sustain all of the firearm related charges because "no firearm was recovered and no gunshot residue was located on any recovered clothing." The court disagrees. For a defendant to be convicted of discharge of a firearm into an occupied structure, they would have to knowingly, intentionally or recklessly discharge a firearm from any location into an occupied structure. 18 Pa.C.S.A. § 2707.1. Also, for a defendant to be convicted of firearms not to be carried without a license, a person would have to carry "a firearm in any vehicle" or carry "a firearm concealed on or about his

18    $ARR$ 19

person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree." 18 Pa.C.S.A. § 6106. Moreover, a defendant can be convicted of carrying firearms in public if they carry a firearm in public in Philadelphia without a license. 18 Pa.C.S.A. § 6108. Additionally, a Defendant can be convicted of possession of an instrument of a crime when they possess any instrument of a crime with intent to employ it criminally. 18 Pa.C.S.A. § 907. In order to establish possession for gun charges, the Commonwealth needs to prove active or constructive possession. n. Commonwealth v. Parrish, 191 A.3d 31, 36 (2018). Constructive possession is found by showing "'conscious dominion,' meaning that the defendant has 'the power to control the contraband and the intent to exercise that control,' (citation and quotation omitted)." Id. at 36 (2018). Further, "'to aid application, we have held that constructive possession may be established by the totality of the circumstances.'" Id. at 36 (2018).

Here in this matter, though Defendant was not found to have actually possessed a gun, the evidence was sufficient enough to show that Defendant, Stefan Mitchell, constructively possessed a gun. Firstly, Ms. Cherry testified that before Defendant left their residence to go to her brother's, Mr. Pate, home to shoot him, she heard a gun racking as he threatened her with shooting the window if she did not give him the keys to her brother's residence. N.T. 06/02/21 at 61-70. Additionally, once Defendant left, Ms. Cherry checked to see if the gun was still in the residence and realized it was gone. Id. at 105. Further, not only did Mr. Pate see and identify Defendant as the shooter, Defendant himself, admitted that he was

19

ARR 20

the person in the Allied Security uniform seen parking his Infinity car near her brother's residence, entering the residence, and exiting out of the rear of the residence. N.T. 06/04/2021 62-65. Moreover, once Defendant went back to the residence that he and Ms. Cherry shared, he asked her to help him get rid of the gun. N.T. 06/02/21 at 73-75. Ms. Cherry witnessed Defendant pull a gun from his waistband; however, Ms. Cherry does not know the location of the firearm. Id. Thus, there is clearly enough evidence using the totality of the circumstances to show that Defendant constructively possessed a firearm that ultimately shot and injured Tyquan Pate. Moreover, though Defense counsel claims that there is not enough sufficient evidence to have found Defendant guilty of discharge of a firearm into an occupied structure, the jury did not render a verdict for that charge, Defendant was not sentenced to that charge, and that charge was acquitted based on that charge not being presented to the jury. Furthermore, the jury, as the finder of fact, is free to believe all, part, or none of the evidence presented. As a result of the testimony and all of the evidence, the jury found Defendant guilty of the firearm related charges.

VI.   Conclusion

For the aforementioned reasons, the Court should affirm Defendant's, Stefan Mitchell, convictions of attempted murder, aggravated assault, possession of a firearm without a license, possession of an instrument of a crime, possession of a firearm on the streets of Philadelphia, and burglary because there was sufficient evidence presented to the jury, the fact finder, to have found Defendant guilty of those offenses.

20   ARR 21

BY THE COURT,

_____

VINCENT L. JOHNSON, J.

Date: December 2, 2021

21

ARR 22